## KNIGHTS OF HONOR *v.* DICKSON.

*(Jackson.* April 14, 1899.)

1. EVIDENCE. *Not hearsay, when.*

It is a well established proposition that when the question is whether a party acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence. (*Post, pp. 258, 259.*)

2. SAME. *Introduction of.*

Time and manner of introduction of evidence are matters within the discretion of the trial Judge. (*Post, pp. 258, 259.*)

3. WITNESS. *Interest.*

The interest of a witness goes to the credibility of his testimony and not to its competency or admissibility. (*Post, p. 259.*)

4. LIFE INSURANCE. *Effect of misrepresentations.*

Under a life policy conditioned upon the truth of the assured's answers and representations contained in his application and in the report of the medical examiner, the policy will be vitiated alike by any misstatement of fact, whether made willfully and with knowledge of the falsity or in good faith through ignorance of the truth, but as to matters of opinion, it is sufficient if the statement was made in good faith and on the best information had or obtainable. (*Post, pp. 259–263.*)

Cases cited: Insurance Co. *v.* Lauderdale, 94 Tenn., 640; K. of P. *v.* Rosenfeld, 92 Tenn., 510; K. of P. *v.* Cogbill, 99 Tenn., 28; Boyd *v.* Insurance Co., 90 Tenn., 212; 16 Wash., 155 (S. C., 58 Am. St. Rep., 28); 119 Ind. (S. C., 12 Am. St. Rep., 393, note).

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

Knights of Honor *v.* Dickson.

CARROLL & McKELLAR for Knights of Honor.

J. C. MYERS, J. M. GREER, and S. J. SHEPHERD for Dickson.

WILKES, J. This is an action by the widow and mother of the deceased upon a policy of life insurance in the order of Knights of Honor upon the life of Paul S. Riley. There was a trial before the Court and a jury, and a verdict and judgment for the amount of the policy and interest, in all, the sum of $2,145.54, and the lodge has appealed and assigned errors. In the application for membership in the order, in this case the applicant stated, "I further agree and contract that the answers I shall make to the questions propounded to me by the medical examiner, as shown by the medical examiner's blank, hereto attached, are true, and I agree that they shall form the basis of my contract with the Supreme Lodge Knights of Honor." In the certificate of membership of policy of insurance the agreement upon the part of the order is "to pay upon condition that the statements made by said member in his petition for membership, and the statements made by him to the medical examiner, are true; and it is agreed that these statements be made a part of the contract, and they are warranted to be true."

In the medical examiner's blank, insured was asked, "Have you ever had any of the following diseases?" Among others, disease of the lungs.

Answer, "No." Question, "How many brothers have you had?" Answer, "Two; one living, at the age of seventeen; one dead, at the age of twenty-two." Question, "Cause of death of the one dead?" Answer, "Malarial fever."

It is claimed that these answers were false as to the physical condition of the insured and as to the cause of the death of the brother; that they must be treated as warranties, and that as a result, the policy is not collectible. The medical examination for insurance was made June 6, 1897; the insured was examined by a physician, and was told he had galloping consumption, and could live but a short time, and he died Nov. 28, 1897, or about five months and twenty-two days after the examination for insurance was made. It also appears that one of the complainants, Mrs. Margaret A. Dickson, who was the mother of insured, was present when the medical examination was made, and helped to answer the questions propounded to him.

It is claimed, by way of defense, that the brother did not die of malarial fever, but of consumption. It appears that he was in bad health, and went to San Antonio, Texas. Before his return the insured also went to Texas, but not to the same locality. While the latter was still in Texas, the brother returned to Tennessee and died, and the insured was not present at the time of his death, but learned of it from his mother afterward.

The first assignment of error is to the admission,

18 P—17

in rebuttal, of certain statements of the mother, Mrs. Margaret A. Dickson, as to what information, or means of information, Paul Riley, the insured, had of the cause of the death of his brother, Willie Riley. She had already been examined and cross-examined, and proved the death of her son, and that the doctor said that he died of acute consumption, and that his brother, Willie, had previously died, and that his physician said to her and to him that he had catarrh of the stomach and malarial fever, and that she had told her son, Paul, what the physician stated was the cause of Willie's death— that he died with catarrh of the stomach and malarial fever, and that Dr. Jones had so told her, and that he, Paul, had no opportunity to know the cause of Willie's death except what she told him.

This evidence, the record shows, was objected to when offered, and the objection overruled and exception taken; but the record does not show upon what ground the objection was based. In argument here it is said the statement could only be a self-serving declaration not brought out in examination or cross-examination, but on a recall of the witness by way of rebuttal.

We are not able to see why this evidence was not admissible. The truth of the answers made upon the medical examination was in issue, as was also the good faith and means of knowledge of the applicant, and, upon plaintiff's theory of the case,

Knights of Honor *v.* Dickson.

the questions of good ·faith and means of information were material.

It is a well-established proposition that when the question is whether a party acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence. Greenleaf on Evidence, Sec. 101. The interest of the mother in making the statement is a matter which went to the credit to be given her testimony, and not to the competency and admissibility of it. The time and manner of its introduction on the trial of the case was within the discretion of the trial Judge.

Without taking up the other assignments seriatim, it may be stated that they relate to the charge of the Court and the question of law as to whether the statements made in the application and medical exam-. ination are to be treated as warranties or representations, and whether their falsity or incorrectness will defeat recovery if made in good faith.

It is insisted the question asked as to the cause of the brother's death was material, that the answer was incorrect and misleading, and that it was, in fact and legal effect, a warranty. The insistence is that the Court, in effect, charged the jury that if the answer was made in good faith, and from the best of the applicant's information, it would not defeat recovery if it was untrue, and it is urged that the correct rule is that such statements will defeat the policy, whether willfully and intentionally false,

and known to be so or not, citing, to sustain this proposition, the case of *Insurance Co.* v. *Lauderdale*, 10 Pickle, 640.

It is also insisted that the Court did not correctly charge that the applicant must, in his examination, make known every fact material to the risk known to him, or that, in all reasonable probability, ought to have been known to him, as to his own health, and, on failure to do so, the policy would be avoided; and if any misstatement was made material to the risk it would invalidate the policy, whether the misstatement was willful and intentional or made through inadvertence or in good faith.

We are of opinion the criticisms made upon the charge are not well made. It is true that any statement made of a material fact which forms the basis of the contract must be considered as a warranty, and if false will vitiate the contract whether made in good faith though ignorantly, or willfully and with knowledge of the falsity. But there is a difference between statements of fact as such and statements of opinion on matters where only opinion can be expressed. Falsehood may be predicated of a misstatement of fact but not of a mistaken opinion as to whether a man has a disease when it is latent and it can only be a matter of opinion. As to what a person may have died of may be largely, if not altogether, a matter of opinion, about which attending physicians often disagree, and as to such matters their statement made can only be treated as repre-

Knights of Honor *v.* Dickson.

sentations and not as warranties, and if made in good faith and on the best information had or obtainable, they will not vitiate a policy if incorrect and· not willfully untrue.    Bacon Benefit Societies, Sec. 203; 11 Am. & Eng. Enc. L., p. 304, Sec. 5, note 3.

This is 'the doctrine laid down in *Knights of Pythias* v. *Rosenfield,* 8 Pickle, 510, and *Knights of Pythias* v. *Cogbill*, 15 Pickle, 28—see, also, May on Insurance, Sec. 166; *Dooley* v. *Hanover Fire Ins. Co.;* 16 Wash., 155 (S. C., 58 Am. St. Rep., 28); *Phœnix Ins. Co.* v. *Pickle*, 119 Ind. (S. C., 12 Am. St. Rep., 393, and note)—and is not in conflict with *Boyd* v. *Insurance Co.*, 90 Tenn, 212, and *Insurance Co.* v. *Lauderdale*, 10 Pickle, 642.

The former was a case of insurance against fire, and the representation or statement was that the property was a dwelling occupied by a tenant.    This was a statement of fact material to the risk on which the insurer relied, and the truth of which the assured must have known, or by the slightest diligence could have known.    It was not in any sense an expression of opinion, but a positive statement of fact resting upon knowledge and not upon opinion. The Lauderdale case was a case of accident insurance, and the statement in that case was of a material fact peculiarly within the knowledge of the applicant— "That his habits of life were correct and temperate." It was a fact about which he could not have made an innocent· mistake, and it was in no way an expression of opinion.    It was untrue in fact

in that case, and the insured was burned up in a
dwelling while intoxicated.   It was stated in that
case that whether the statement be treated as a rep-
resentation or warranty, if untrue, it would avoid the
policy.

The Court, in response to special requests by the
defendant's counsel, said that if Mrs. Dickson, the
mother of the insured, and one of the joint bene-
ficiaries in the policy, was present when the appli-
cation was made, and stated, or caused her son to
state, that his brother died of malarial fever, when,
as a matter of fact, he died of consumption, then,
if such statement was adopted by the insured, and
relied on by the company, it was material to the
risk, and, the son soon thereafter dying of consump-
tion, it would avoid the policy, whether the incorrect
statements were made intentionally, or through mis-
take and in good faith, and there could be no
recovery.   And, again, that if she helped her son
to make the answers, it was her duty, as well as
his, in the utmost good faith, to disclose fully and
truthfully, in answer to questions, all that either of
them knew about the health of the applicant, his
exposure to a contagious or infectious disease, and
what his brother died of, and if they, or either of
them, misstated or concealed the fact that the brother,
some time before, died of consumption, and the in-
sured, a short time after being insured, died of
consumption, then the Court charges that such mis-
statement or concealment was a fact material to the

Knights of Honor *v.* Dickson.

risk and avoided the policy, whether intentionally made or made through mistake, and the verdict must be for defendant.

This was stating the case as contended for by defendant, and, as we think, too strongly, specially as to matters about which the statements must necessarily be mere opinions, but there is certainly nothing of which defendant can complain, as it was putting the case on his theory. It is said that inasmuch as the Court charged this rule as to the mother particularly and directly, there is no evidence on which a verdict in her favor could rest, unless the jury disregarded the charge.

We think this assignment is not well taken, as there is some evidence that the brother did die of malarial fever, and not of consumption, and this was the statement of the attending physician, according to the testimony of the mother. The weight of testimony is that the insured was not affected with any disease when he was examined, but it manifested itself soon afterwards, and rapidly proceeded to his death. We think the plaintiffs are entitled to recover the policies, and interest thereon. The judgment is affirmed with costs.