FRED D. BLACKMAN *v.* UNITED STATES CASUALTY CO.
*et al.*

(*Knoxville.*   September Term, 1906.)

1.  **HEALTH INSURANCE.** Applicant's inaccurate statement
    as to obscure or undeveloped disease will not forfeit policy,
    when.

    In an application for a health insurance policy against loss of
       time by reason of sickness, an inaccurate statement as to a
       matter of opinion merely, as a statement concerning the appli-
       cant's bodily condition with respect to obscure or undeveloped
       disease, will not cause a forfeiture of the insurance, if such
       statement was made honestly and without any reason to be-
       lieve that it was false or a misrepresentation, and after the
       exercise of due diligence to learn the truth of the matter so rep-
       resented.   (*Post, pp.* 580-586.)

    Cases cited and approved: Boyd v. Insurance Co., 90 Tenn., 212;
       Knights of Pythias v. Rosenfeld, 92 Tenn., 508; Insurance Co.
       v. Lauderdale, 94 Tenn., 642; Rand v. Society, 97 Tenn., 291; K.
       of P. v. Cogbill, 99 Tenn., 28; Knights of Honor v. Dickson, 102
       Tenn., 255; Woodward v. Insurance Co., 104 Tenn., 49, 52-54;
       Society v. Ford, 104 Tenn., 533.

2.  **SAME.** Same. Case in judgment.

    Applicant's statement, in an application for a health insurance
       policy against loss of time caused by nephritis and certain other
       named diseases, that he had not consulted a physician or taken
       treatment during the last two years, except for bad cold the pre-
       vious week, and that he had recovered, is as to a matter of mere
       opinion, and will not forfeit the policy, where it does not ap-
       pear that he knew better, though the proof shows that he was
       then entering on the first stages of nephritis.   (*Post, pp.* 580-
       586.)

Blackman v. Casualty Co.

**3.   SAME.   Notice of sickness is a condition precedent to right of recovery under the policy, when.**

In a health insurance policy against loss of time by reason of certain diseases insuring "subject to the provisions, conditions, definitions, and limits" in the policy, a clause providing that "failure of the insured to comply with any provision or condition herein shall forfeit all rights to indemnity," refers to and embraces within its terms the provision or condition of the policy requiring written notice of any disease insured against to be given to the insured within ten days after its contraction, and makes the notice a condition precedent to the right of recovery, and a failure to give the notice operates to forfeit all claims for such sickness.   (*Post, pp.* 587-594.)

Acts cited and construed:   1895, ch. 160, sec. 22.

Cases cited and construed:   Thornton v. Insurance Co., 116 Ga., 121; Insurance Co. v. Thornton, 119 Ga., 455; Meech v. Society, 63 N. Y. Supp., 1008, 50 App. Div., 144; Martin v. Association, 61 Hun, 487, 16 N. Y. Supp., 279.

Case cited and distinguished:   Insurance Co. v. Whitaker, 112 Tenn., 151, 167.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —T. M. McConnell, Chancellor.

Clift & Cooke, for Blackman.

Watkins & Thompson, for Casualty Company et al.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought in the chancery court of Hamilton county to recover upon a policy of insurance against loss of time by reason of illness arising from a certain disease mentioned in the policy. The suit was instituted by the insured, but he died during the progress of the cause, and action was revived in the name of its widow, who is the present complainant. A decree was entered in the court below for the amount claimed, and appeal was prayed and prosecuted to this court.

The policy is as follows:

"In consideration of twenty-two and $\frac{50}{100}$ dollars premium, and the warranties and agreements in the application for this policy, which application is hereby made a part thereof, the United States Casualty Company, herein called the company, *insures,* subject to the provisions, conditions, and limits herein, Fred D. Blackman, of Chattanooga, Tennessee, by occupation a traveling passenger agent, herein called the insured, for one year beginning at noon, standard time, on the first day of April, 1903, *against loss of time,* but not death, caused exclusively and directly by any of the following diseases: . . .

"Nephritis—inflammation of the kidneys, characterized by fever, scanty, high-colored urine, and thirst.
. . .

"Provided such disease is contracted not earlier than fifteen days after this policy takes effect and, independently of any and all other causes, renders the insured

Blackman v. Casualty Co.

wholly and continuously unable to transact each and every part of the duties pertaining to the occupation above described and necessitates continuous confinement indoors and treatment by a regularly qualified physician; and provided written notice of such disease be given to the home office of the company within ten days of its contraction.

"In the sum of thirty and $\frac{00}{100}$ dollars per week, during the period of such disability and confinement, not to exceed fifty-two consecutive weeks.

"When claim is made, proof under oath shall be furnished to the home office of the company on its forms within two weeks after the termination of disability. Forms may be had upon written request to the home office of the company. The company shall not be held to have waived any rights by the delivery of such forms, nor by the receipt or retention of any proof or evidence. valid claims are payable immediately on receipt of proof.

"The company shall have the right and opportunity to examine the insured's person and body when and so often as it may require.

"This policy does not cover loss caused or contributed to, primarily or secondarily, directly or remotely, by bodily injury, voluntary or unnecessary exposure to contagion or infection, complication with or resulting from any disease not specified herein, disease contracted during or resulting from military or naval service, or while the insured is outside the United States, nor any person under eighteen or over sixty years of age.

"The issue of this policy cancels any prior health policy issued by the company to the insured. This policy shall not be in force while the premium remains unpaid.

"The company may cancel this policy by mailing notice to the insured's address appearing on the company's records with its check for the unearned part of the premium.

"If at the time of such loss the insured's maximum weekly indemnity health insurance exceeds his weekly earnings from the occupation described herein, the liability shall be such proportion of the weekly indemnity named herein as such weekly earnings bear to such maximum insurance.

"If the insured shall claim indemnity under any accident insurance policy or certificate, he shall not be entitled to indemnity hereunder for the same or concurrent loss.

"Fraud, misrepresentation, or concealment concerning this insurance or any claim hereunder shall void this policy.

"No proceeding shall be brought, unless commenced within three months from the time required for proof of loss to be furnished.

"Any premium due the insured shall be returned on demand.

"Failure of the insured to comply with any provision or condition herein shall forfeit all rights to indemnity.

"No agent has authority to change this policy or

waive any provision, condition, definition, or limit herein, and any notice to an agent or any knowledge by him shall not be held to effect a change or a waiver of anything herein. No assignment or renewal of or change in this policy and no waiver of its provisions, conditions, definitions, or limits shall be valid unless agreed to in writing by the secretary or assistant secretary of the company.

"In witness whereof, the United States Casualty Company has caused this policy to be signed by its president and secretary on the day above written, but it shall not be in force until countersigned by a duly authorized representative of the company."

The application contained the following:

"I hereby apply for a health insurance policy to be based on the following statements which I warrant to be complete and true."

After stating his name, his weight, height, his address, and his occupation, and that his weekly earnings were in excess of the maximum weekly indemnity named in all the health and benefit policies held by him, he states:

"I have no health, accident, or benefit insurance, and I have never had any application for insurance declined or acceptance postponed, and no company, association, or order, has ever canceled or refused to renew a policy or certificate for me. I have no application for health, accident, benefit, or life insurance pending.

"I am in full possession of all senses and bodily mem-

bers. Free from any intemperate habits, local, constitutional, functional, or organic diseases, mental or physical disorder, defect, deformity, impairment, or infirmity. I have not been exposed during the past fifteen days to any contagious or infectious diseases, and I have not consulted a physician, or taken treatment during the last two years, except as follows: Was treated for bad cold last week, but have recovered.

"I agree that the insurance shall not take effect until this application is accepted by the company at its home office in the city of New York, and the premium has been paid.

"I agree to accept the policy subject to all its provisions, conditions, definitions, and limits, and I agree that the company shall not be bound by statements made to or knowledge acquired by agents or brokers, in writing in this application."

We shall consider the questions made in the order of time in which they were presented in the course of events.

1. The question made on the application.

2. That concerning the fifteen day clause.

3. That upon the notice.

4. That as to the amount of the recovery.

The facts applicable to the first question as found by the court of chancery appeals are as follows:

That court says in its opinion on this subject the following: "Dr. McQuillain, the witness of complainant, testifies that on March 27, three days before this

application was made, he first saw him (Blackman); that he was called in at his house and that he had a little asthmatic attack, that he seemed to be laboring with his breath, that he gave him some iron, and that he was out the next day. And the doctor further says that he had an asthmatic attack and was breathing hard. It does not appear, however, that Mr. Blackman was informed by his doctor on this occasion, or that he knew, that he had asthma. This, as stated, was three days before his application for the policy. So far as disclosed, Mr. Blackman may have believed that his trouble was a bad cold. He was certainly out attending to his business on the next day, or in two days thereafter. But whatever his belief, it is reasonably certain, we think, from the proof, that he was then entering on the first stages of nephritis, and be this as it may, he consulted with and was treated by a physician. The majority of the court, however, do not think this necessarily in the application, under the facts and circumstances, avoids the policy."

We have several cases in this State bearing upon the foregoing question. Stated in the inverse order of their publication, they are as follows: *Woodward* v. *Ins. Co.*, 104 Tenn., 49, 52-54; *Guaranty Soc.* v. *Ford*, Id., 533; *K. of H.* v. *Dixon*, 102 Tenn., 255; *Ins. Co.* v. *Cogbill*, 99 Tenn., 28; *Rand* v. *Ins. Co.*, 97 Tenn., 291; *Ins. Co.* v. *Lauderdale*, 94 Tenn., 642; *Ins. Co.* v. *Rosenfeld*, 92 Tenn., 508; *Boyd* v. *Ins. Co.*, 90 Tenn., 212.

The substance of these decisions is that where the

statement is one concerning the existence or nonexist‧ence of a given fact, there can be no recovery, if the matter be not truly stated, whether such failure to state with truth and correctness be the result of fraud or of innocent mistake; but that, if the statement be as to a matter of opinion merely, a lack of accuracy will not cause a forfeiture of insurance, if such statement was made honestly and after the exercise of due diligence to learn the truth of the matter so represented; it was further held that a statement concerning one's bodily condition with respect to obscure or undeveloped disease would be a mere matter of opinion, and that the insured would not be responsible for a misrepresentation as to such a matter, unless he had reason to believe that the misrepresentation was false.

In the present case, we infer from the findings of the court of chancery appeals that the insured had no knowledge that he was in the incipient stage of nephritis. He was not informed even that he had asthma. He supposed that he had merely a cold, and the only symptom mentioned that was present to his mind was that he had labored breathing.  This fact, of course, might have accompanied a cold arising from some slight congestion of the lungs or other organs used in breathing.

We are of opinion, therefore, that there is nothing in this first defense.

The second point, concerning the fifteen-day clause, is covered by the case of *Bean* v. *Aetna Life Insurance Co.*, 111 Tenn., 186, and need not be further noticed.

The facts with respect to notice, the next point in order, are in substance these: the insured knew as early as November 30, 1903, that he had nephritis, yet he did not give notice to the company until the 24th of December, and, therefore, failed to comply with the provision of the policy which required that he should give notice within ten days after the contracting of the disease. We do not think that this provision was a warranty or a misrepresentation falling under section 22 of the insurance act.

The question whether the giving of the notice was a condition precedent to the right of recovery depends upon whether a forfeiture clause was attached for failure to give it. The solution of this question depends upon a construction of the policy.

In this connection, it should be noted that the policy "insured subject to the provisions, conditions, definitions, and limits herein." Those portions of the policy which follow under the head of "provisions" as shown by the context, are these: "provided such disease is contracted not earlier than fifteen days after this policy takes effect, and, independently of any and all other causes, renders the insured wholly and continuously unable to transact each and every part of the duties pertaining to the occupation above described and necessitates continuous confinement indoors and treatment by a regularly qualified physician; and provided written notice of such disease be given to the home office of the company within ten days of its contraction." The clauses of the policy

providing for forfeitures are couched in the following language: "fraud, misrepresentation, or concealment concerning this insurance or any claim hereunder shall void this policy." Also the following: "failure of the insured to comply with any provision or condition herein shall forfeit all rights to indemnity."

We think the last clause quoted refers to and embraces within its terms the provision in respect of notice. The notice clause is either a provision or a condition. The word "provision" of course indicates nothing technical, but is a general term, which may include either a promise or undertaking of some kind, or a condition. We are of opinion that the notice clause expresses a condition precedent to the right of recovery. It has been so construed in many cases. In Cooley's Briefs on the Law of Insurance, vol. 4, sec. 3457, it is said: "A condition in a policy that if notice and proofs of the death or injury are not furnished within a specified time, all claims therefor shall be forfeited to the company, has been frequently held to render the production of such notice and proofs within the specified time a condition precedent to any recovery by insured." Citing among other cases, *Thornton* v. *Travelers' Ins. Co.,* 116 Ga., 121, 42 S. E., 287, 94 Am. St. Rep., 99; *Travelers Ins. Co.* v. *Thornton,* 119 Ga., 455, 46 S. E., 678; and *Meech* v. *National Acc. Soc.,* 63 N. Y. Supp., 1008, 50 App. Div., 144.

In referring to the *Thornton Case,* it is said by the author that an amendment to the declaration setting up a further claim was held defective for failing to allege

timely notice of additional injury, and in the *Meech Case* the plaintiff was held to have failed in his case on account of a failure of the evidence to establish notice within the specified time, neither of which holdings seem justifiable on any other theory than that of a condition precedent.

It is further said by the same author: "In *Martin* v. *Equitable Acc. Assn.*, 61 Hun, 487, 16 N. Y. Supp., 279, where, also, the policy contained such a provision, it was said that a failure to give notice within the time would work a forfeiture."

We do not think that *Ins. Co.* v. *Whitaker*, 112 Tenn., 151, 167, is in opposition to what has just been said. The doctrine there laid down was that if a policy of insurance provides that notice and proofs of loss are to be furnished within a certain time after loss has occurred, but does not impose a forfeiture for failure to furnish them within the time prescribed, and does impose a forfeiture for a failure to comply with other provisions of the contract, the insured may maintain an action though he does not furnish proofs within the time designated, provided he does furnish them sometime prior to commencing the action upon the policy, and that this is true, even though the policy provides that no action can be maintained until after a full compliance with all the requirements thereof. The rule just mentioned is not applicable to the present case, because it appears that a forfeiture was imposed under the terms of the policy now before us for failure to give notice. The

language is "that a failure of the insured to comply with any provision or condition herein shall forfeit all rights to indemnity." The clause upon the subject of notice contained a provision or condition within the terms of the clause last quoted. This takes the present case out of the rule.

It follows that there was no right of recovery, and the court of chancery appeals committed error in rendering a judgment in favor of complainant.

It is unnecessary to consider the fourth point since what has just been said covers all of the rights claimed.

Let the decree of the court of chancery appeals be reversed and the bill dismissed with costs.

### ON PETITION TO REHEAR.

MR. JUSTICE NEIL delivered the opinion of the Court:

On the original hearing of this cause, a most careful consideration was given to it and the results of the court's reflections were preserved in the form of a written opinion. The petition presents what it claims is a new view—one not brought to the attention of the court at the former hearing. We do not so regard it. It was in substance and effect involved in the previous argument.

The court of chancery appeals, in its report of facts, after considering the various items of evidence, says:

"Now, in the face of, all this evidence, it is simply impossible to escape the conviction that Mr. Blackman knew on November 30, 1903, that he had nephritis."

That court finds specifically that on December 24, 1903, Mr. Blackman wrote the physician of the company as follows: "I have been sick and in the hands of a physician since November 30; would have notified you before this, but hoped my illness would amount to but little. After becoming seriously ill, it slipped my mind and was overlooked until today."

That court reports a letter which Mr. Blackman's physician wrote to the company's physician in November, which contains the following statement: "I have been attending F. D. Blackman in his present illness since November 31, 1903, at which time he developed nephritis, with attending symptoms—albumenuria and cardiac symptoms and swollen feet—which render him unable to attend to any business."

This letter was dated January 5, 1903. From all the evidence the court of chancery appeals finds and reports: "Blackman was disqualified from performing his duties as traveling passenger agent, in the legal sense of the terms of the policy from the time it was definitely ascertained that he had nephritis until his death. This is manifestly so, as a matter of fact, if the evidence in the record is to be believed," etc.

In the face of findings like these, we do not think it would be useful to consider the question whether notice would be required in a case where the beginnings of the disease were so obscure that the sufferer had no knowledge of its presence within his organism. We have read with care the petition for rehearing, the reply there-

to, and the petitioner's rejoinder, and have carefully thought over the question, but in view of the strong facts above set out, we do not think we should do more than say, upon what we regard as truly an abstract question on the present record, that we do not think, under a proper construction of the policy, such obscure beginnings of disease were intended. A reasonable construction of the question would require that there should be some symptom or symptoms sufficiently congnizable and distinct to call the attention of the insured to the fact that he was out of a state of health. This is made perfectly clear by a reproduction of a few of the designations of diseases in the policy, which are thus contemplated as producing the loss of time insured against, viz.:

"*Cholera Morbus.*—Acute catarrhal inflammation of the mucous membrane of the stomach and intestines, of sudden onset, characterized by violent abdominal pains, incessant vomiting, and purging, cold surface, rapid, feeble pulse, prostration, and spasmodic contractions of the abdominal muscles.

"*Colitis.*—Acute dysentery. Acute inflammation of the mucous membrane of the large intestine, characterized by fever, pain, and frequent small, bloody discharges from the bowels.

"*Diptheria.*—Malignant sore throat.—Acute contagious disease caused by a specific bacillus, characterized by moderate fever, glandular enlargement, great prostra-

tion and a fibrinous exudation, usually located in the throat.

"*Locomotor ataxia.*—Disease of the nervous system, characterized by three stages—disturbance of sensation, loss of coordination, paralysis — first manifested by sharp, darting, electro-like pains in the lower limbs, followed by loss of sensation, impaired sight, general emaciation, and loss of muscular control of the lower limbs.

"*Nephritis.*—Inflammation of the kidneys, characterized by fever, scanty, high-colored urine, and thirst.

"*Rheumatism*—rheumatic fever—acute general disease, variable and shifting in character, attacking the joints, with a marked tendency to involve the heart, characterized by local fever, inflammation, swelling, aching pains, and acid sweats, distressing, debilitating, and frequently prostrating.

"*Synovitis.*—Disease of the synovial membrane, involving one or more joints, characterized by aching pain, local elevation of temperature, a tendency to redness and swelling, rendering use of the joints difficult and distressing.

"*Yellow fever.*—Acute, infectious, malignant, paroxysmal disease, characterized by violent fever, jaundice, bloody vomit, hemorrhage, and adbominal pains."

The "contraction" of the several diseases mentioned in the policy had reference to the period of the manifestation of these symptoms. After each disease mentioned in the policy the symptoms are stated. There

117 Tenn—38

could rarely, if ever, be any doubt of these symptoms arresting the attention of the insured, and upon their persistence, for less even than ten days, there could rarely be a case where they would not arouse the deep concern of the sufferer and suggest taking the advice of a physician.

In this view of the matter, which we believe is wholly sound, it is difficult to see any inequality in the contract, or any unreasonableness in the requirement that the insurer should have notice of the symptoms so likely to result in disability. By timely notice, the insurer would have an opportunity—a not unreasonable privilege to contract for—of observing the progress of the malady and of deciding for itself, through competent medical advice, whether the case had been properly diagnosed in the notice, and following the true course of the illness ascertained, with a view to paying, if within the policy, and of refusing to pay, if not.

There is nothing in the authorities referred to by counsel which contravenes these views.

The petition is without merit and must be dismissed.