## MARTHA B. BROWNLOW, Admx. v. JOHN BARTON PAYNE et al.

Western Section.   November 30, 1925.

Certiorari denied by Supreme Court, January 30, 1926.

1. **Appeal and error.   Conflicting evidence makes a question for the jury.**
    Where there is a conflict in the testimony and there is enough evidence to support a verdict either way, the issue must be left to the jury.

2. **Appeal and error.   Improper exclusion of immaterial evidence is not grounds for reversal.**
    Where the evidence excluded by the court went only to the discrediting of the testimony of a witness and if admitted, would not have warranted any material discrediting of the witness, held the exclusion thereof was not reversible error.

3. **Attorney and client.   Breach of contract.   Justification.**
    Nothing will justify the discharge of an attorney in the face of his contract except the fact of disbarment, soliciting business or improper conduct of the suit instituted.   No information, however plausible and misleading it may be, if not true, will excuse a breach of contract.

4. **Appeal and error.   Exclusion of cumulative evidence not reversible error.**
    Where a fact has been established by uncontradicted evidence the improper exclusion of cumulative evidence is not reversible error.

5. **Attorney and client.   Evidence.   Evidence held to show attorney not guilty of misconduct in conducting a case.**
    In an action by an attorney to recover a fee under a contract where the defense was that the attorney had not properly prosecuted the case, held the evidence did not show the attorney guilty of any misconduct in prosecution of his case.

6. **Attorney and client.   Damages.   Measure of damages for breach of contract.**
    In an action by an attorney to recover a fee under a contract where the attorney was without cause discharged by the client who retained other attorneys who secured a judgment for her in the case, held that the attorney may either rescind the contract of employment and recover on a quantum meruit for services rendered to the date of his discharge or he may treat the contract as continuing although broken by the client and may recover for the breach, and the measure of damages for such breach is the full contract price.

7. **Attorney and client.   Interest.   An attorney is not entitled to interest on a contract for a contingent fee.**
    In an action by an attorney to recover his fee under a contract which provided for a fee of one-third of the amount of the judgment secured in the case, held that such a contract does not come under section 3494, Shannon's Code, and plaintiff is not entitled to interest on the amount recovered from the date of refusal of payment to the date of judgment.

8. **Interest.   A contract providing for the payment of an indefinite sum does not come under section 3494, Shannon's Code, providing for the payment of interest.**
    In an action by an attorney to collect a fee on a contract which provided that the attorney was to receive one-third of the amount collected held

that the contract was not definite as to the sum to be paid and did not come under section 3494, Shannon's Code, and therefore the allowance of interest was in the discretion of the court.

9. **Statutes. Section 3494, Shannon's Code, applies only to contracts for specific sums.**
Held that a contract for an attorney fee wherein the amount was to be determined by the amount recovered by the attorney was not specific in amount and did not come under this section of the statutes.

Appeal in Error from Circuit Court, Shelby County; Hon. A. B. Pittman, Judge.

Affirmed except as to interest.

Ewing, King & King and H. P. Posert, of Memphis, for plaintiff in error.

R. G. Brown, of Memphis, for defendant in error.

HEISKELL, J. This proceeding is a contest between R. T. Cameron, the petitioner, a member of the Memphis Bar, and Mrs. Martha G. Brownlow, over a fee for services claimed to have been rendered by said Cameron. The case has been tried three times and on the last trial, before a jury, a verdict was rendered in favor of the petitioner for $3,750, to which the court, on motion, added interest, bringing the amount of the judgment to $4,668.75.

After motion for a new trial was overruled, Mrs. Brownlow appealed and has assigned errors. As there is nothing left in the case except this petition of Cameron for his fee and Mrs. Brownlow's defense thereto, Cameron may be referred to as the plaintiff and Mrs. Brownlow as the defendant.

In January, 1919, the husband of Mrs. Brownlow was killed through the negligence of the St. Louis & San Francisco Railroad Company, then being operated by Walker D. Hines, Director-General of Railroads. She entered into a written contract with petitioner, on January 29, 1919, by which she employed him as attorney to bring suit for damages for the death of her husband, for a contingent fee of 33 1/3 per cent of the amount recovered.

Cameron had Mrs. Brownlow appointed administratrix of her deceased husband and brought suit February 1, 1919. After the suit had been pending more than a year Mrs. Brownlow discharged Cameron and employed Ewing, King & King in his stead. Some six months after the employment of the last-mentioned counsel, the claim was settled for $11,250, of which the railroad paid $2,500 to Ewing, King & King, as a fee, and paid the balance, $8,750 into court.

On December 28, 1920, Cameron filed his motion in the case to have his fee of one-third of the amount realized declared a lien on the fund in court. Mrs. Brownlow filed her answer to the motion and denied Cameron's right to recover on the following grounds:

1. That Cameron had solicited the employment and hence had disentitled himself to a fee.

2. It was denied that he properly prepared the case for trial or that it was diligently prosecuted.

3. That Cameron persistently refused to have John Barton Payne, Agent, substituted for Walker D. Hines, Director-General, as required by the Transportation Act of 1920.

4. That Cameron then, and for a long time, prior thereto, was actively engaged in what is known as "ambulance chasing" and was an improper party to represent her and try the case.

Nothing is to be gained by setting out the testimony of the case preceding the last trial. We will consider only the assignments of error which, of course, go only to the question of whether or not error was committed on the last trial by court or jury.

The first assignment of error is that there is no evidence to support the verdict of the jury.

Cameron is plaintiff. Mrs. Brownlow is the defendant. She does not deny signing the contract under which Cameron claims, but she says he cannot recover because in securing the said contract Cameron violated chapter 42 of the Acts of 1919, which forbids the soliciting of business by attorneys. If this is true, of course Cameron cannot recover. The defendant and her brother, J. B. Coffey, testified that Cameron came to the house of defendant twice, soliciting employment in the case; that Coffey saw him, but defendant did not, that he left his card, that Coffey turned him away telling him that they did not want to employ a lawyer. That Marshall next came soliciting for Cameron and said that Cameron had sent him, but he likewise was turned away without accomplishing anything. That afterwards one Perry came and said that Cameron had sent him and that he would like for the defendant to see Cameron and talk with him, that thereupon Mrs. Brownlow agreed to see Cameron; that Perry left and in a very short while Cameron returned with Marshall and that afterwards she was overpersuaded to sign the contract employing Cameron. This is a very brief synopsis of the defendant's testimony as to plaintiff's soliciting the case, and certainly if the jury had found for the defendant it would have been sufficient to sustain a verdict.

On the other hand Cameron denies that he went to the house or saw either Coffey or the defendant, or even knew where the house was until Marshall came and told him that Mrs. Brownlow wanted to see him; that then he asked Eugene Boyd to take him in his car, as his (Cameron's) car was out of order; that they took Marshall along to show them the way. That he and Marshall went in and talked with Mrs. Brownlow, no one else being present in the room, Boyd staying in the car. That defendant said she wanted to see her

brother before making any contract and for him to come back. That about eight o'clock that night he went back and Mr. Coffey met him at the door; that this was the first time he had, ever seen Mr. Coffey; that he told Coffey who he was and why he had come and that he, Coffey said defendant was not feeling well and had retired and for him to come back at another time; that he did go back the next day, talked at length with Mr. Coffey and defendant about the case, changed the contract from fifty to thirty-three and a third per cent at Mr. Coffey's suggestion, and then the contract was signed. He testified that he did not know any one by the name of Perry and that he had sent no one to see the defendant and had instructed no one to go.

Mr. O. S. Marshall testified that he was a railroad man, working for the Frisco Railway, and was slightly acquainted with Mr. Brownlow during his lifetime; that in January, 1919, he was working at night, and, on his way home, he stopped in at Mrs. Brownlow's house to see what the railroad was doing to compensate her for the death of her husband; that Mrs. Brownlow told him the Company had offered her $5,000, and he told her it was not enough and she ought to see a lawyer; that he recommended very highly Mr. Cameron, who had had a suit for his brother, which had been very successfully handled; that Mrs. Brownlow said she would be glad to see him, and that same day, about 11 o'clock, in the forenoon, he went to Mr. Cameron's office and offered to take him out to the house; that Mr. Cameron called up a friend (Mr. Boyd) and asked the loan of his car, Mr. Cameron's car being in the shop; that a few minutes after, Mr. Boyd came with his car and drove witness and Mr. Cameron out to Mrs. Brownlow's house, the witness directing Mr. Boyd how to go, as neither he nor Cameron knew the way; that Mrs. Brownlow met him and Mr. Cameron at the door and there was quite a long interview between Mrs. Brownlow and Mr. Cameron, in which witness took no part, though he was in the room during the whole time.

That no one else was present at this interview. That, finally, Mrs. Brownlow said she did not wish to make any contract until she could see her brother, who was expected in that afternoon, and invited Mr. Cameron to return, which he said he would do; that they then left there in Mr. Boyd's car, witness being dropped near his house and Mr. Boyd and Cameron going on to town.

He testified that he knew no man by the name of Perry and that he never saw J. B. Coffey until he met him in the court room, at the first trial.

Marshall also said that Cameron had never asked him to solicit any business for him, and they had never spoken about this case until after he had talked with defendant.

Boyd corroborates Marshall and Cameron so far as their testimony connects him with the transaction.

On this issue there was a square conflict of testimony. There was evidence enough to support a verdict either way. The jurors, with the witnesses before them, chose to believe the plaintiff and his witnesses, rather than the defendant and her witnesses. There is evidence to support the verdict.

The second assignment is that the court limited the scope of the cross-examination of Cameron as to the disbarment proceeding against him at Chattanooga. Counsel for defendant admits that the purpose of further cross-examination of the plaintiff was merely for the purpose of discrediting his testimony. If the court committed any error in this regard, it was not material because the testimony excluded would not have warranted any material discrediting of plaintiff as a witness.

The third assignment is that the court erred in excluding the testimony of John B. Coffey as to what he had learned about the disbarment proceedings against Cameron from 126 Tenn. Judge McReynolds of the criminal court at Chattanooga, having a disagreement with Cameron about a bill of exceptions, accused him of striking out certain words, caused disbarment proceedings to be instituted against him, tried the case and entered judgment of disbarment. The Supreme Court reversed the proceeding and the case was dismissed below. The case is reported in 126 Tenn., 614. Defendant's counsel wanted Coffey to testify that he had read this report, told his sister about it in order to argue that this justified her in discharging plaintiff and putting an end to the contract relation of attorney and client. If the exclusion of this testimony was error, it was harmless because Mrs. Brownlow herself had seen the report in 126 Tenn., 614. But it was not error. The question was not one of negligence, in which the doctrine of probable cause could figure in a suit for damages. Nothing could justify the discharge of the attorney in the face of his contract, except the fact of disbarment, soliciting business, or improper conduct of the suit instituted. No information, however plausible and misleading it might be, if not true, could excuse a breach of contract. It might eliminate bad faith, that is all. Knights of Honor v. Dickson, 102 Tenn., 255, has no application to the present case.

Assignment four is thus stated in brief for defendant:

"In corroboration of Cameron's story Eugene Boyd took the stand and undertook to testify to a conversation on the porch of the Brownlow home, which he stated he did not know whether he actually heard or whether Cameron himself told him later. Incredible as it may seem, the court ruled in the following way:

" 'THE COURT: If you say you don't know whether you heard the gentleman on the porch give this information, or whether it was Cameron that told it to you, that you heard it, I will permit you to state it.' "

If this was error it was harmless, as the fact was established by the uncontradicted evidence of Cameron. Coffey did not deny that he had this interview with Cameron, or that this conversation took place. Besides, it is undisputed that Boyd took him there and brought him back and that Coffey met him at the door and he did not go in. It is not material whether Boyd heard what was said or not.

Assignment five:

"On cross-examination Mr. Coffey was asked if he had not tried to settle the case and cut Mr. Cameron out, both with the railroad and with Mr. L. M. Smith. He answered that he had not, and it is claimed that this was a collateral matter and Cameron was bound by the answer."

The court allowed counsel for Cameron to ask Smith whether Coffey had tried to settle the suit with Smith behind Cameron's back, and the answer of Smith tended to show that he had.

Suppose it was error to allow this testimony of Smith to contradict Coffey on a collateral matter, what harm could it do? It could only be made the basis of an argument that Coffey was influencing Mrs. Brownlow, therefore she was presumed to know what he was doing; therefore, she was not giving her real reason for discharging Cameron, when she put it on the ground of bad conduct and character. Here again the determinative question is not what reason she gave, but what reason in fact she had. If there is any error in this ruling of the trial judge, it is too high an attenuation to justify a reversal.

Assignments six, seven and eight. These are treated together in brief for defendant and predicate error on that portion of the charge of the court which is as follows:

"So, in this case Mrs. Brownlow in her answer filed sets up three grounds, upon which she resists the payment of this fee. She claims that the lawsuit was not properly prepared by Mr. Cameron, for trial. She claims that he did not diligently prosecute the suit after it was filed. She claims, third, that he solicited the employment in the first instance, and that, therefore, he cannot recover in the case.

"Gentlemen of the jury, the court instructs you that in the first two grounds alleged in the answer, that as to those two, there is not sufficient evidence before the court to justify the jury in finding against Mr. Cameron on those grounds; that is to say, the first ground being that he did not diligently prosecute

the suit. The evidence on those questions has been very carefully followed and listened to by the court. For the court was himself quite familiar from his record with how the suit was filed, and how it was pursued.

"They are all matters of record, and within the knowledge of the court."

This may be said to amount to a peremptory instruction to the jury as to certain contentions, that is, that there is no evidence to justify a verdict to the effect that Cameron did not properly prepare the case for trial and that he did not diligently prosecute it. Certain aspects of these contentions certainly present questions of law. As for instance, whether or not the suit was properly brought and whether it was necessary to substitute the name of John Barton Payne, Agent, as defendant. There is no contention that the suit was not properly brought in the first instance, but it is said the plaintiff neglected the prosecution. The judge would probably know more about this than anyone else, but concede that defendant was entitled to have the question passed on by the jury. The only real testimony on the subject besides Cameron's was that of the attorneys for the Railway, L. M. Smith and McDonald, and they agree with Cameron that he was doing all he could to bring the case to trial and that they were using every effort to prevent a trial. That there was no agreement to delay except on account of the illness of Col. Canada, counsel for the defendant Railway. This would warrant the court in telling the jury there was no evidence to support a finding for the defendant on the contention that plaintiff had failed to prosecute the suit with diligence.

There remains to consider whether the failure of Cameron to have the name of the Agent appointed to represent the United States substituted instead of the Director-General, who was the proper defendant at the time the suit was brought, justified the defendant in discharging him. For the defendant, it is insisted that the judgment, if Cameron had obtained one, would have been void. For plaintiff, it is contended that this would not be so, and besides that this substitution could be made at any time. When the letter of May 24, 1920, was written something more than two months had elapsed since Hines became Agent instead of Director-General and just ten days since John Barton Payne had been appointed Agent. It is true Cameron made a motion to substitute the Agent, and when this was granted on condition that process issue and be served on the Agent, which would have worked a long delay, Cameron withdrew his motion, in order to get a speedy trial. Yet defendant says he was not trying to bring the case to trial. There is no dispute about the facts bearing on this point. The question is, would these facts have justified the jury in finding that Cameron was so negligent or ignorant, so unfaithful to

the interest of his client in this matter of failing to substitute the United States Agent for the Director-General, as to forfeit all rights under his contract? The trial judge did not think so. Thinking as he did, it was proper for him to direct the verdict as he did. Was it error for him to think as he did?

We have examined the cases cited for defendant. None of them decide that the judgment taken in the case at the time of Cameron's discharge would have been void.

In the absence of any authority to support the contention of defendant, there are authorities which might well cause a capable lawyer to think the substitution at the time the case was set for trial unimportant. In Payne v. White House Lbr. Co., 231 S. W., 417, the Court of Civil Appeals of Texas says:

> "There seems to be a diversity of opinion among the courts, as to the meaning of that act, or, in other words, the method by which the agent should be made a party. We call especial attention to the case of Gundlach v. Railway Company (Wis.), 179 N. W., 985, and the case of Kersten v. Hines (Mo.), 223 S. W., 586. These cases seem to hold that it would be sufficient simply to substitute Payne for Hines in the judgment without notice."
> See also Keene v. Hines, 183 N. Yl. Sup., 520; Blevins v. Hines, 264 Fed., 1005; Lanier v. Pullman Co., 105 S. E. (N. C.) 21.

Counsel for plaintiff calls attention to the fact that counsel for defendant, who took the place of Cameron in the suit, did not have Payne, Agent, substituted as defendant for five months after their employment. The reply is made that the conduct of other counsel is no excuse to Cameron. This is true, and yet, perhaps, it is entitled to be considered as a circumstance showing that very able counsel did not consider it a matter of vital importance in the spring of 1920. Besides, counsel representing Mrs. Brownlow against the Railway Company did not expect the Railway to try this case.

In view of the foregoing considerations we do not think the evidence on this point would have supported a verdict in favor of the defendant, and therefore there was no error in the action of the trial judge.

Assignments nine and ten present the contention that if plaintiff is entitled to recover at all, he is entitled only to recover on a quantum meruit for the value of services rendered, and that the trial court erred in allowing a recovery on the contract for the whole amount.

Counsel for both appellant and appellee cite and rely upon 6 Corpus Juris, p. 724, but quote different parts of the text. We think that portion of the text which states the rule in Tennessee is as follows:

"Where an attorney has been discharged by his client without cause, the attorney may rescind the contract of employment and may recover on a quantum meruit for services rendered up to the date of his discharge; or he may treat the contract as continuing, although broken by the client, and may recover for the breach. According to the weight of authority, the measure of damages for such breach of contract, is the full contract price." 6 C. J., 724; Bright v. Taylor, 4 Sneed, 158; Cantrell v. Chism, 5 Sneed, 116; McLain v. Williams, 8 Yer., 330.

Counsel for the defendant in their brief quote from a note to 24 American & English Cases Annotated 741. The quotation is accurate, but in the same note will be found practically the same language quoted from Corpus Juris, supra, and citation of authority to support the rule that an attorney employed on a percentage basis, where the client prevents him from making a recovery, is entitled to recover the full contract percentage. Carlile v. Barnes, 102 App. Div., 573, 92 N. Y. S. 917; Larned v. Dubuque, 86 Ia., 166.

The eleventh assignment predicates error upon the action of the trial judge in allowing interest on the amount of plaintiff's recovery. The question was submitted to the jury, which decided against allowing interest, but on motion the court allowed it, saying that if in his discretion, he would not allow interest, but that he considered that the law made the allowance mandatory. If in the discretion of either court or jury it may be considered that the discretion has been exercised against the allowance of interest and the question to be considered is, does the Statute require the allowance of interest in this case?

The Statute provides:

"All bills single, bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned." Shannon's Annot. Code of Tenn., sec. 3494.

It is conceded that if this Statute applies, interest follows as a matter of law.

In Am. Univ. v. Parrish, 136 Tenn., 165, the court says:

"The rule is that interest is allowable on any written instrument signed by the debtor, for a valuable consideration, admitting an indebtedness of a definite sum to the payee, which the debtor promised to pay at a specific time, even though upon the happening of a named contingency. Brady v. Clark, 12 Lea (80 Tenn.), 323; Knights of Pythias v. Allen, 104 Tenn., 623, 58 S. W. 241."

In all the cases cited the instrument admitted an indebtedness of a definite sum, though the time of payment may be contingent.

In Tennessee Fertilizer Co. v. Int. Agr. Corp., 146 Tenn., 451, a buyer sued a seller under a written installment contract for the sale of sulphuric acid. The amount was fixed; the price was fixed. The Chancellor refused interest and the Supreme Court said it was not error; that the allowance of interest was within the discretion of the court. That the allowance of interest as a matter of right is purely statutory and its positive allowance must be confined to those obligations and demands specified and enumerated in statutory provisions. The court held that the code did not apply to this case. This case is cited with approval in So. Construction Co. v. Halliburton, 149 Tenn., 319.

The only part of the contract under which Cameron claims in this case that can be claimed to come within the language of the Code is this: "Said attorney has agreed to render his services on a contingent fee of thirty-three and one-third per cent of the amount realized from the claim."

This instrument is not within the language of Code 2494, Shannon's Ann. Code, section 3494, nor within the rule laid down in Am. Univ. v. Parrish, supra.

The contract in this case is more analogous to that in Tenn. Fertilizer Co. v. Int. Agr. Corp., 146 Tenn., 451. If one agreed to pay a contractor to build a house on a cost plus basis, we think it would be within the discretion of the court to allow interest.

The case of Saunders v. Riddick, 127 Tenn., 701, is not in point. To apply the decision in that case to the facts of this, it would mean merely that if Cameron had obtained judgment for Mrs. Brownlow against the Railway Company and the defendant company had appealed and interest had accrued, he would have been entitled to one-third of the interest, as well as of the original judgment. In that case, it was the judgment of Saunders that bore interest and not by virtue of the section of the Code involved here.

There are two classes of cases in which this question of interest has been discussed: (a) Cases in which the amount and time of payment are both fixed and certain. (b) Those in which the amount is fixed, but the time of payment is contingent, which have been held to fall within the statute. A third case, such as suits for breach of contract to deliver goods on contract of sale, where price and time of delivery were fixed. In this last class of cases the amount to be paid depends on the difference between the market price and the contract price. These cases are held not within the statute.

In which class does the present case fall? The time and the amount to be paid are both contingent. It may be said that the contingency which fixes the time of payment also definitely fixes the amount. When there is a recovery one-third is to be paid as attorney's fee. It may be said also, that this is true in a contract to sell goods; when

the breach takes place, the market value and the contract price fix the value. The distinction is narrow, but the idea of our Supreme Court seems to have been that unless the instrument falls clearly within the statute, interest is left to the discretion of the trial court.

In our opinion the discretion of the lower court and jury were not controlled by the statute; the allowance of interest was not mandatory, and it was error to so hold. The discretion of the lower court and jury having been exercised against the allowance of interest, this assignment of error is sustained. All other assignments are overruled and except as to the interest the judgment of the lower court is affirmed.

The plaintiff Cameron will recover of Mrs. Brownlow the sum of $3,750 with interest and costs.

Owen and Senter, JJ., concur.