Clarence W. ADAMS and Barbara Adams, Plaintiffs-Appellants,

v.

Marion W. MELLEN and Nashville Recycling Corporation; Carrold Boyd and B & G Distributor, Inc., Defendants,

James W. Rutherford, Rutherford, Crockett & Guenther, Appellees.

Court of Appeals of Tennessee, Middle Section.

March 27, 1981.

Permission to Appeal Denied by Supreme Court July 6, 1981.

Robert E. Corlew, III, Dicken E. Kidwell, Murfreesboro, for plaintiffs-appellants.

James W. Rutherford, James P. Guenther, Rutherford, Crockett & Guenther, Nashville, for appellees.

OPINION

LEWIS, Judge.

Appellants have appealed from an order allowing appellees an attorneys' fee of $16,-666.66. Appellees were the original attorneys employed by appellants to represent them for the wrongful death of their daughter. Prior to the conclusion of the lawsuit, appellants terminated their relationship with appellees and hired other attorneys.

The pertinent facts are as follows: Appellants were the parents of Rosa Marie Adams, who was born January 4, 1976. On September 7, 1978, Rosa Marie was playing in the front yard of appellants' home when she was struck by one of two vehicles which collided in the street near the home. Rosa Marie died as a result of the injuries she received. Shortly after the accident, appellants were contacted by representatives of an insurance carrier, offering to settle. Appellants told them they were not interested in settling without the aid of legal counsel.

Subsequently, appellants contacted Mr. James Rutherford of Rutherford, Crockett and Guenther. Appellants, in their affidavits, alleged that at the time they contacted Mr. Rutherford no fee arrangements were made. Mr. Rutherford, in his affidavit, states that he accepted employment on the basis of a contingency fee of one-third of any recovery plus out-of-pocket expenses involved in the preparation for trial. There was no signed contract of employment entered into between the parties.

In November, 1978, Mr. James Guenther of appellees' law firm called appellants and asked them to come to appellees' office. Appellants went to the office and at that time were informed by Mr. Rutherford that the insurance company had made a settlement offer of $40,000. Appellants, in their affidavits, state that Mr. Rutherford recommended that they accept this settlement, stating that if they refused the settlement and went to court, they had a chance of "not getting much of anything." Mr. Rutherford, in his affidavit, states that he advised appellants to reject the $40,000 offer. Appellants state that the November meet-

ing was the first time fees were discussed and that Mr. Rutherford told them, "You know we get a third of any settlement." Appellants state that when they "continued to express our hesitancy to accept the $40,000 settlement, Mr. Rutherford then used the back of the envelope which held our child's picture to show us how interest would accrue and continue to make the amount received larger. We, at that point, told Mr. Rutherford that we felt this amount was insufficient, and we mentioned that the funeral expenses alone for our daughter amounted to nearly $5,000.00."

Later an offer of $45,000 was made which appellees advised appellants to accept. Appellants state that they subsequently received a call from Mr. Guenther and that Mr. Guenther cited the benefits of accepting the $45,000 settlement offer and stated that he felt that this was the best offer that would be made by the insurance company and that the offer should be accepted. Appellants subsequently received a letter signed by Mr. Guenther, informing them of the $45,000 offer and stating, "[I]t is our duty to recommend to you that you accept the $45,000.00 settlement."

Appellants state, in their affidavit, that they at that time determined that they were not being adequately represented and lost confidence in the judgment and advice of their attorneys.

Subsequently, appellants employed other attorneys to represent them in this matter and on January 9, 1979, wrote to appellees, advising that they were terminating their employment. Prior to receiving the letter terminating appellees' employment, Mr. Guenther wrote to appellants, telling them that he had advised the insurance company that appellants had declined the settlement offer of $45,000 and adding: "I am now inclined to believe that they will come forward with an offer of $50,000.00."

Mr. Rutherford, on January 12, 1979, after receiving appellants' letter of January 9, 1979, terminating their employment, wrote to appellants and stated, *inter alia*, as follows:

Now as far as terminating our employment in this matter, let me say that while you have a right to do that we have a right to be paid a fee which we have developed to date. You indicate that you would judge yourselves to be liable to us for some kind of hourly rate for the hours we have spent on this case. We were not employed in this case on an hourly rate. We were employed on the basis of a one-third contingency fee. We would be due at this point one-third of $45,000.00, or $15,000.00 in the event that you wish to retain other counsel.

Subsequently, the attorneys employed by appellants after termination of appellees' employment secured a settlement of $90,000. Prior to the $90,000 settlement, on March 2, 1979, an order was entered allowing appellees to withdraw as attorneys for appellants, and the Court found that appellees' firm should have a fee of $16,666.66 and declared a lien on any sum or amount paid as a result of the death of Rosa Marie Adams.

Appellants claim the issue before this Court is whether or not appellees should have been granted a contingency fee of one-third, since appellants allege no contract existed for such recovery; or whether appellees should have a fee based on quantum meruit.

Appellees insist that the Trial Judge based the award of attorneys' fees to them on the basis of quantum meruit and not on a contingent fee. However, they insist that even if the award was not on the basis of quantum meruit, they had a contingency fee contract with appellants for the payment of a one-third contingency fee and that they are entitled to the higher of quantum meruit or the contingency fee.

There is a material conflict in the affidavits regarding the employment contract between appellants and appellees. Appellees' affidavit states that a contingency fee was discussed with appellants in the very beginning. Appellants deny this but do admit that at the time appellees informed appellants of the $40,000 settlement offer, they also informed appellants regarding the one-

third contingency fee. The record does not show that appellants made any objections and, in fact, the record, by implication, shows appellants acquiesced, since appellees continued to represent appellants and it was not until after the $45,000 settlement offer that appellees were discharged. Appellants further assert that, even if there was a contingency fee contract, "no provision was made for the payment if either we [appellants] or the law firm terminated the attorney-client relationship prior to the time a verdict or satisfactory settlement was reached." We find nothing in the record, or in the briefs of appellees, to rebut this contention.

█ It is well settled in Tennessee that a client has a right to discharge his attorney with or without cause, *Chambliss, Bahner & Crawford v. Luther*, 531 S.W.2d 108, 109 (Tenn.App.1975); but upon discharge the attorney is entitled to just and adequate compensation for services rendered, *Spofford v. Rose*, 145 Tenn. 583, 611, 237 S.W. 68, 76 (1922).

> Where an attorney has been discharged by his client without cause, the attorney may rescind the contract of employment and may recover on a quantum meruit for services rendered up to the date of his discharge; or he may treat the contract as continuing, although broken by the client, and may recover for the breach. According to the weight of authority, the measure of damages for such breach of contract, is the full contract price. [Citations omitted.]

*Brownlow v. Payne*, 2 Tenn.App. 154, 162 (1925).

█ In both *Chambliss, supra,* and *Brownlow v. Payne, supra,* the attorneys were discharged without cause. It is clear that the rule in Tennessee is that where an attorney is discharged without cause, he may collect either on the basis of quantum meruit or on his contract. However, our research discloses no Tennessee cases wherein the attorney has been discharged with cause. In the case at bar appellants contend that they had cause to terminate the attorney-client relationship. They allege that (1) appellees failed to keep them properly informed concerning the progress of their case; (2) they were not adequately represented, and appellees put pressure on them to settle the lawsuit for an amount which turned out to be less than half of that ultimately received; (3) they entered into no contract with appellees and no amount of percentage of compensation for appellees was discussed until after they were told of the $40,000 settlement offer; and (4) they were not informed that they would have to pay out-of-pocket expenses; and that all of these matters caused them to lose confidence in the judgment and advice of appellees.

Appellees' affidavits refute most, if not all, of what appellants' affidavits set out.

█ We are of the opinion that, taken together, *Chambliss, supra, Brownlow, supra,* and *Spears v. Polk,* 17 Tenn.App. 556, 69 S.W.2d 239 (1933), indicate that an attorney's election to sue for recovery either in quantum meruit or on a contingency contract is limited to the situation where his discharge was caused by the client's breach.

> The refusal by a client to accept a settlement offer obtained and recommended by his attorney does not amount to a breach of a contingent fee contract of employment, and the attorney whose employment is terminated following a refusal by his client of an offer of settlement which he obtained is not entitled to be compensated on the basis of the contract, but he is rather entitled to be compensated on a quantum meruit basis.

7A C.J.S. *Attorney & Client* § 289 (1980). We are of the opinion that the better rule is that a client's discharge of his attorney after refusing a settlement offer in a contingency fee case, unless done in bad faith, is not a breach; and that where there is no breach, the proper measure of recovery is the lesser of quantum meruit or the contract price.

█ The contention of appellees in the case at bar that the award of $16,666.66 represents quantum meruit is without foundation. The amount awarded is one-third

of $50,000, the last settlement offer communicated by the insurance company to appellees. To the extent that it represents reasonableness, as stated in the Trial Judge's order declaring the lien, this may have been predicated on the affidavits submitted on behalf of appellees. These affidavits indicate only that a one-third contingency fee is a reasonable way to handle a personal injury suit in the Nashville community. The mere fact that a one-third contingency fee is "reasonable" in the sense that it is customary in local personal injury suits is insufficient to sustain a corresponding award on the ground of quantum meruit.

■ There are various factors to be considered in setting a reasonable value on attorneys' services. In *Hail v. Nashville Trust Co.*, 31 Tenn.App. 39, 212 S.W.2d 51 (1948), this Court listed several such factors but commented that "[i]n determining what is reasonable compensation for legal services, each case must, of course, depend upon its own peculiar facts." *Id.* at 51, 212 S.W.2d at 56. In *Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn.1980), our Supreme Court generally summarized the relevant factors to be considered. They are: (1) the time devoted to performing the legal service; (2) the time limitations imposed by the circumstances; (3) the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; (4) the fee customarily charged in the locality for similar legal services; (5) the amount involved and the results obtain-

ed; and (6) the experience, reputation, and ability of the lawyer performing the legal service. Additionally, the Court stated that the factors set out at the Code of Professional Responsibility DR 2–106[1] for guidance of the individual attorney in setting private fees may provide similar assistance to courts exercising their discretion to set fees in cases before them. *Id.* at 676–77. We would add that another factor to be considered is whether the attorney has substantially or completely performed his duties.

Appellees contend that appellants have waived, and are estopped and otherwise barred to assert, a right to contest the award of attorneys' fees to appellees by reason of the final order entered on April 30, 1980, which was signed by appellees, as well as by the attorneys for the other parties having an interest in the judgment. Appellees contend that the order provided that all matters in issue had been compromised and settled, ordered defendants to pay to the clerk the $90,000 and costs, and ordered the clerk to pay the attorneys' fees to appellees to discharge their lien and the remainder to plaintiffs and their present attorneys. They contend that the clerk did pay these amounts, as ordered, to appellants and appellees within a few days after the entry of the order.

■ This argument is without merit. It cannot be said that appellants have taken any position inconsistent with maintaining

---

1. DR 2–106. Fees for Legal Services.—

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

(C) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case.

that they owe no contingency fee. After the order declaring the lien was filed, appellants sought an interlocutory appeal immediately. Thereafter, they filed a motion excepting to the lien and requesting that the order be modified to show that the lien was based on the contract and was not declared because "there was no difference of opinion between the law as applied by the Court and interpreted by the plaintiffs." This motion was denied.

While a voluntary payment of a judgment does waive the right to appeal, payment of the judgment in this case cannot be called voluntary in view of the Trial Court's final order that the clerk pay out the judgment. Furthermore, the record is silent as to whether the clerk disbursed any funds in this case, and this issue cannot be considered under the reasoning of *Metropolitan Development & Housing Agency v. Hill*, 518 S.W.2d 754, 757 (Tenn.App.1974).

Appellees also place some emphasis on appellants' failure to make a showing at the hearing where the amount of the lien was declared. This contention is without merit. The burden of establishing the reasonable fee is upon the party claiming it, not upon the client. *See McDowell v. Miller*, 557 S.W.2d 266, 270 (Mo.App.1977).

This cause is remanded to the Trial Court for the purpose of determining whether appellees were discharged with or without cause. If, after an evidentiary hearing, it is determined by the trier of fact that appellees were discharged without cause, then the attorneys' fees shall be set either on the basis of quantum meruit or contract, whichever is larger. If the trier of fact determines that appellants had cause to discharge appellees, then appellees' fee shall be determined on the basis of quantum meruit or the contract price, whichever is less. Costs are taxed one-half to appellants and one-half to appellees. The judgment of the Trial Court is reversed and the cause is remanded to the Trial Court for further proceedings not inconsistent with this opinion.

TODD, P. J., and CONNER, J., concur.