IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2000 Session

## HIRAM SEIBERS, JR. v. PEPSI-COLA BOTTLING COMPANY, ET AL.

**Appeal from the Circuit Court for Putnam County**
**J-6270     J. Curtis Smith, Judge**

_____

**No. M1999-02559-COA-R3-CV - Filed December 21, 2000**

_____

This case involves a dispute between a lawyer and his former client over a fee in a personal injury case. The client discharged the lawyer before the case was concluded and agreed to give the lawyer a lien on the potential recovery for the work the lawyer had already performed. When the lawyer attempted to collect his fee after the case was settled by another lawyer, the former client asserted that the lawyer should forfeit his fee because he engaged in unethical conduct. Following a bench trial, the trial court found that the lawyer had "technically" violated Tenn. S. Ct. R. 8, DR 5-105(A) but that the lawyer's conduct had not prejudiced the client and that the client had waived his conflict-of-interest claims. Accordingly, the trial court awarded the lawyer $69,525.83 in legal fees and expenses. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court for Putnam County Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Samuel J. Harris, Cookeville, Tennessee, for the appellant, Hiram Seibers, Jr.

Winston S. Evans, Nashville, Tennessee, for the appellee, Jerry A. Jared.

### OPINION

Horace Manning was injured on June 28, 1994, when his automobile was struck by an automobile owned by Hiram Seibers and being driven by Mr. Seibers' daughter. Mr. Seibers had no insurance on his automobile when the collision occurred. Accordingly, Mr. Manning looked to his own insurance company because he had $25,000 in uninsured motorist coverage. After his insurance company offered him $11,000, Mr. Manning retained Jerry A. Jared, a lawyer practicing in Cookeville, to represent him. Mr. Jared pressed Mr. Manning's claim both with his insurance company and with Mr. Seibers. Eventually, in February 1995, Mr. Seibers, on the advice of counsel,

filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Tennessee.

On April 28, 1995, Messrs. Jared and Manning met to discuss Mr. Seibers' bankruptcy petition. Following the meeting, Mr. Jared filed a "proof of claim" form on Mr. Manning's behalf asserting a $75,000 unsecured nonpriority claim against Mr. Seibers arising out of the collision. Believing that Mr. Manning's chances of recovering anything from Mr. Seibers were remote, Mr. Jared then focused his efforts on obtaining the best possible settlement from Mr. Manning's insurance company. The insurance company eventually agreed to pay Mr. Manning $25,000 – the full amount of his coverage. On June 8, 1995, Mr. Manning settled with his insurance company and executed a release giving the insurance company subrogation rights to the first $25,000 of any other recovery. Thereafter, Messrs. Manning and Jared let the statute of limitations run on Mr. Manning's claims against Mr. Seibers and his daughter.

On August 14, 1995, Mr. Seibers was injured when his automobile was struck by a truck owned by the Pepsi-Cola Bottling Company of Cookeville, Inc. ("Pepsi-Cola"). Because he had been favorably impressed with Mr. Jared's representation of Mr. Manning, Mr. Seibers sought out Mr. Jared and asked Mr. Jared to represent him with regard to his claims against Pepsi-Cola and the other defendants. On August 17, 1995, Messrs. Seibers and Jared signed an "attorney employment agreement" in which Mr. Jared agreed to represent Mr. Seibers in return for a fee equal to one-third of any recovery Mr. Seibers might receive.[1] Mr. Jared did not discuss Mr. Seibers' employment offer with Mr. Manning.

On June 10, 1996, Mr. Jared filed a complaint on behalf of Mr. Seibers in the Circuit Court for Putnam County against Pepsi-Cola and others seeking $2,000,000 in damages. Thereafter, Mr. Jared continued to prepare for trial by filing appropriate motions, conducting pre-trial discovery, and participating in settlement discussions with the lawyers for the other parties. During this time, as far as this record shows, Mr. Jared gave little if any thought to Mr. Manning's pending bankruptcy claim. If fact, both Messrs. Manning and Jared assert that they forgot about it.

Much to everyone's surprise, the bankruptcy court decided to hold a hearing regarding Mr. Manning's claim.[2] Mr. Jared discussed this development with both Messrs. Seibers and Manning. He told Mr. Manning that he could not represent him because he was now representing Mr. Seibers

---

[1]Messrs. Jared and Seibers provided differing accounts regarding their discussions in August 1995 about Mr. Manning's bankruptcy claim. Mr. Seibers insists that they never discussed Mr. Manning's claim. Mr. Jared asserts that they did discuss it and that he sought another lawyer's opinion about whether a conflict existed. Mr. Jared recalls that this lawyer did not believe there was an impermissible conflict because Mr. Manning's claim would not succeed because it was unliquidated and because the statute had run without a negligence suit being filed in state court. Based on this advice, Mr. Jared decided that he could represent Mr. Seibers. The trial court accredited Mr. Jared's account of his initial meeting with Mr. Seibers.

[2]The record does not shed light on the purpose of this hearing. However, it could very well have been triggered by the change in Mr. Seibers' finances that occurred in October 1995 when he won $100,000 in a lottery.

and referred Mr. Manning to another lawyer. He also asked Mr. Manning to sign a release that would enable him to continue representing Mr. Seibers. In April 1997, Messrs. Seibers, Manning and Jared and Mr. Seibers' bankruptcy lawyer appeared before the bankruptcy court. Mr. Jared informed the court that he was no longer representing Mr. Manning with regard to his bankruptcy claim against Mr. Seibers and that Mr. Manning would be representing himself. When both Messrs. Manning and Seibers assented to the arrangement, the bankruptcy court excused Mr. Jared from the case.[3]

Mr. Jared continued to represent Mr. Seibers after the April 1997 hearing in bankruptcy court. Following two settlement conferences on September 26, 1997 and October 9, 1997, Pepsi-Cola and the other defendants offered Mr. Seibers $200,000 to settle his case. Mr. Seibers was dissatisfied with the offer and rejected it. On October 22, 1997, Mr. Seibers discharged Mr. Jared because of their disagreements over the value of Mr. Seibers' case and replaced him with John L. Lowery, a lawyer from Nashville. The next day, Messrs. Seibers and Lowery met with Mr. Jared to discuss the process for transferring the case to Mr. Lowery. At the conclusion of the meeting, Mr. Jared agreed to reduce his fee from one-third of the total recovery to a reasonable fee based on the last settlement offer, and Mr. Seibers signed a "release" granting Mr. Jared a lien on the potential recovery. After Mr. Seibers signed the release, Mr. Jared turned over his file to Mr. Lowery. On October 29, 1997, the trial court entered an order granting Mr. Jared a lien for this fee and substituting Mr. Lowery as Mr. Seibers' counsel of record.

In December 1997, Mr. Seibers first expressed dissatisfaction with Mr. Jared because he had assisted Mr. Manning by filing the proof of claim in Mr. Seibers' bankruptcy case. At that time, he told Mr. Lowery that he had discharged Mr. Jared because of a conflict of interest and, therefore, that Mr. Jared should not be entitled to receive any fee for the work he had done between August 1995 and October 1997.

On January 9, 1998, Mr. Seibers settled his claims against Pepsi-Cola and the other defendants for $275,000. In accordance with the October 23, 1997 release, $69,524 was paid into court pending the determination of Mr. Jared's fee. Mr. Seibers insisted that Mr. Jared was not entitled to any of these funds because of a conflict of interest. Because Messrs. Seibers and Jared could not agree on a disposition of the funds, the trial court conducted a bench trial in 1998. On July 15, 1999, the trial court filed a memorandum opinion containing the following findings: (1) that Mr. Seibers' testimony was "contradictory" and "bizarre" and, therefore, that Mr. Seibers was an "untruthful witness;" (2) that Mr. Seibers did not prove that he had been damaged by Mr. Jared's "technical violation" of the Code of Professional Responsibility; and (3) that Mr. Seibers waived Mr. Jared's conflict of interest by not terminating him at the earliest practical time in the litigation and

---

[3]Mr. Jared had no other connection with the bankruptcy proceedings until December 1997 when he received a $12,000 check from the bankruptcy court made payable to Mr. Manning. He returned the check to the bankruptcy court, and, based on the advice of one of the lawyers employed by the Board of Professional Responsibility, informed Mr. Manning's insurance carrier that Mr. Manning was going to receive $12,000 from Mr. Seibers' bankruptcy estate. Mr. Jared also informed Mr. Manning that he had returned the check to the bankruptcy court and that he had informed Mr. Manning's insurance company about the money.

by renegotiating the amount of Mr. Jared's fee when he was fully aware of Mr. Jared's "technical" ethical violations. Based on these findings, the trial court awarded Mr. Jared a $66,667.67 fee plus $2,858.16 for expenses. Mr. Seibers has appealed this decision.

# I.
## A DISCHARGED LAWYER'S RIGHT TO COMPENSATION

The lawyer-client relationship is essentially contractual. In its most basic terms, the contract consists of an exchange of competent legal services by the lawyer in return for the payment of a reasonable fee by the client. *Starks v. Browning*, 20 S.W.3d 645, 650 (Tenn. Ct. App. 1999); Restatement (Third) of the Law Governing Lawyers §§ 16, 17 (2000). If a lawyer advances a client's lawful objectives with reasonable competence and diligence, the lawyer is entitled to the reasonable, agreed-upon compensation without regard to the actual, pecuniary benefit of the services to the client. *Spofford v. Rose*, 145 Tenn. 583, 611, 237 S.W. 68, 76 (1922); *Adams v. Mellen*, 618 S.W.2d 485, 488 (Tenn. Ct. App. 1981).

Clients cannot be forced to entrust their legal matters to an unwanted lawyer. Therefore, a client may discharge a lawyer at any time regardless of cause and regardless of any contract between the client and the lawyer. *Yoakley v. Hawley*, 73 Tenn. 670, 673 (1880); *In re Ellis*, 822 S.W.2d 602, 607 (Tenn. Ct. App. 1991); *Chambliss, Bahner & Crawford v. Luther*, 531 S.W.2d 108, 110 (Tenn. Ct. App. 1975). However, a client's decision to discharge a lawyer does not necessarily abridge the lawyer's entitlement to the salary and benefits he or she has already earned. Restatement (Third) of the Law Governing Lawyers § 32 cmt. b. Thus, if a client discharges a lawyer without cause, the lawyer is entitled to recover either on the basis of breach of contract or quantum meruit, whichever is larger. *Crawford v. Logan*, 656 S.W.2d 360, 364 (Tenn. 1983); *Adams v. Mellen*, 618 S.W.2d at 488. If, on the other hand, the client discharges the lawyer for cause, the lawyer is entitled to recover on the basis of breach of contract or quantum meruit, whichever is less. *Crawford v. Logan*, 656 S.W.2d at 364.[4]

Even though discharging a lawyer for cause does not necessarily disentitle the lawyer to compensation, a lawyer engaging in clear and serious violations of his or her duty to a client may be required to forfeit some or all of the compensation the lawyer has earned in the matter. *Crawford v. Logan*, 656 S.W.2d at 364; *Coleman v. Moody*, 52 Tenn. App. 138, 155, 372 S.W.2d 306, 313-14 (1963); Restatement (Third) of the Law Governing Lawyers § 37. For a forfeiture of any sort to be

---

[4]The Restatement points out that the contact damages should be limited to the "ratable proportion of the compensation provided by any otherwise enforceable contract . . . for the services performed." Restatement (Third) of the Law Governing Lawyers § 40(1). Lawyers should receive the full amount of their contracted-for fee only in circumstances such as where a client discharges a contingent fee lawyer without cause just before the contingency occurs in order to avoid paying the contractual percentage fee. Restatement (Third) of the Law Governing Lawyers § 40 cmt. c.

in order, the lawyer's ethical violation must be "clear"[5] and must in some way have damaged or prejudiced the client's interests. *Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400, 410 (Tenn. 1991); *Crawford v. Logan*, 656 S.W.2d at 365; *Alexander v. Inman*, 903 S.W.2d 686, 694 (Tenn. Ct. App. 1995). Thus, a lawyer's attempt to collect a "clearly excessive" fee warrants the forfeiture of the fee because it is a clear violation of Tenn. S. Ct. R. 8, DR 2-106(A) and because it damages the client. *White v. McBride*, 937 S.W.2d 796, 803 (Tenn. 1996).

Decisions regarding the forfeiture of a lawyer's fee for violations of his or her duty to a client are discretionary. Restatement (Third) of the Law Governing Lawyers § 37 cmt. b. They must be made based on the particular facts and circumstances of each case. *Crawford v. Logan*, 656 S.W.2d at 365. Considerations relevant to the question of forfeiture include: (1) the gravity of the violation, (2) the willfulness of the violation, (3) the effect of the violation on the value of the lawyer's work for the client, (4) any other threatened or actual harm to the client, and (5) the adequacy of other remedies. Restatement (Third) of the Law Governing Lawyers § 37. Denying a lawyer of all or a portion of earned compensation is not necessarily appropriate in every case, especially when doing so will result in a windfall to the client. *White v. McBride*, 937 S.W.2d at 803; *see also Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Schell*, 629 So. 2d 947, 952 (Fla. Dist. Ct. App. 1993); *Somuah v. Flachs*, 721 A.2d 680, 690 (Md. 1998); *Burrow v. Arce*, 997 S.W.2d 229, 241-42 (Tex. 1999); Restatement (Third) of the Law Governing Lawyers § 37 cmt. b.

## II.
### MR. JARED'S ENTITLEMENT TO A FEE

Mr. Seibers asserts that Mr. Jared should forfeit the fee he earned by representing Mr. Seibers for over two years because of a conflict of interest arising out of Mr. Jared's representation of Mr. Manning. In order to prevail with this claim, Mr. Seibers must prove that Mr. Jared clearly violated the Code of Professional Responsibility and that the violation somehow damaged him or prejudiced his interests. Mr. Seibers has not carried his burden because he has not demonstrated how Mr. Jared's conduct adversely affected the outcome of his settlement negotiations with Pepsi-Cola and the other defendants.

### A.

We turn first to the question of whether Mr. Jared had an impermissible conflict of interest when he agreed in August 1995 to represent Mr. Seibers while he was still representing one of Mr. Seibers' creditors in Mr. Seibers' bankruptcy proceeding. We have determined that Mr. Jared had a clear conflict of interest in August 1995 when he agreed to represent Mr. Seibers without first obtaining the consent of both Messrs. Manning and Seibers as required by Tenn. S. Ct. R. 8, DR 5-105(C).

---

[5]An ethical violation is "clear" when a reasonable lawyer, knowing the relevant facts and law reasonably accessible to the lawyer, knows that the conduct is wrongful. Restatement (Third) of the Law Governing Lawyers § 37 cmt. d.

Attorneys have a fiduciary relationship with their clients. *Alexander v. Inman*, 974 S.W.2d 689, 693 (Tenn. 1998); *Hager v. Fitzgerald*, 934 S.W.2d 668, 671 (Tenn. Ct. App. 1996); *Fitch v. Midland Bank & Trust Co.*, 737 S.W.2d 785, 789 (Tenn. Ct. App. 1987). They are obligated to exercise their utmost good faith in the discharge of their duties to their client. *Crawford v. Logan*, 656 S.W.2d at 364; *Starks v. Browning*, 20 S.W.3d at 650. Thus, lawyers must preserve their clients' confidences and secrets, exercise independent judgment on their clients' behalf, and represent their clients zealously within the bounds of the law. Tenn. S. Ct. R. 8, Canons 4, 5 & 7; *Clinard v. Blackwood*, No. 01A01-9801-CV-00029, 1999 WL 976582, at *7 (Tenn. Ct. App. Oct. 28, 1999), *perm. app. granted* (Tenn. Apr. 10, 2000); *Dyer v. Farley*, No. 01A01-9506-CH-00229, 1995 WL 638542, at *5-6 (Tenn. Ct. App. Nov. 17, 1995) (No Tenn. R. App. P. 11 application filed).

Lawyers must also avoid impermissible conflicts of interest. *State v. Locust*, 914 S.W.2d 554, 557 (Tenn. Crim. App. 1995); Restatement (Third) of the Law Governing Lawyers § 16(3). Thus, Tenn. S. Ct. R. 8, DR 5-105(A) directs that

> A lawyer shall decline proffered employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under DR 5-105(C).

A conflict of interest arises whenever there is a substantial risk that a lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another client, a former client, or a third person. Restatement (Third) of the Law Governing Lawyers § 121; *State v. Tate*, 925 S.W.2d 548, 552-53 (Tenn. Crim. App. 1995) (holding that a conflict of interest arises when a lawyer's regard for the duty owed to one client tends to lead to disregard of the duty owed to another client).

As far as the conflict of interest question is concerned, the pivotal question in this case is whether, for any period of time, Mr. Jared was simultaneously representing two clients with differing interests in the same subject matter. Mr. Jared asserts that he was not representing clients with differing interests because he was no longer representing Mr. Manning when he agreed to accept Mr. Seibers' case. We respectfully disagree.

On April 28, 1995, Mr. Jared prepared and filed Mr. Manning's "proof of claim" form in Mr. Seibers' pending bankruptcy proceeding. On this form, Mr. Jared instructed the bankruptcy court to send all notices to "Jerry A. Jared, Attorney." By this act, Mr. Jared became Mr. Manning's attorney of record in bankruptcy court – despite his later protestations that he had filed the form for Mr. Manning only as an accommodation and that he had eventually forgotten that he had filed it. He remained Mr. Manning's attorney of record until April 1997 when he obtained the release from

Mr. Manning and informed the bankruptcy court that he was no longer representing Mr. Manning in Mr. Seibers' bankruptcy proceeding.

Having determined that Mr. Jared was Mr. Manning's attorney of record in Mr. Seibers' bankruptcy proceeding from April 1995 to April 1997, we must now determine whether Mr. Manning's interests were adverse to Mr. Seibers' interests during that period of time. The answer is plainly yes. Even if the bankruptcy court had confirmed Mr. Seibers' plan of reorganization,[6] Mr. Manning remained one of Mr. Seibers' creditors. As one of Mr. Seibers' creditors, Mr. Manning was in a position to petition the bankruptcy court to either modify or revoke Mr. Seibers' Chapter 13 plan. Mr. Seibers' settlement with Pepsi-Cola and the other defendants would have provided grounds for modifying the plan. Thus, Mr. Manning's interests in the subject matter of Mr. Seibers' suit against Pepsi-Cola and the other defendants were adverse to Mr. Seibers. As long as Mr. Jared was Mr. Manning's attorney of record in the bankruptcy proceeding, he had a conflict of interest with regard to representing Mr. Seibers in his suit against Pepsi-Cola.

This conflict of interest could have been ameliorated in April 1995 had Mr. Jared taken timely and definitive steps to address it. Tenn. S. Ct. R. 8, DR 5-105(C) provides that

> a lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each.

Accepting as true Mr. Jared's later testimony that he did not intend to represent Mr. Manning in the bankruptcy proceeding, Mr. Jared should have done in April 1995 what he eventually did in April 1997. First, he should have formally informed Mr. Manning that he would not represent him in the bankruptcy proceeding. Second, he should have obtained Mr. Manning's informed consent for his representation of Mr. Seibers in the Pepsi-Cola matter. Third, he should have fully disclosed to Mr. Seibers the role he had played with regard to Mr. Manning's claim in the bankruptcy proceedings. Fourth, he should have obtained Mr. Seibers' informed waiver of any potential conflict of interest claim arising out of Mr. Jared's representation of Mr. Manning. Tenn. S. Ct. R. 8, EC 5-16.

---

[6] We are somewhat handicapped by the lack of evidence regarding the details of Mr. Seibers' bankruptcy. The record shows that it was a Chapter 13 individual reorganization, as opposed to a Chapter 7 liquidation. Accordingly, we presume that Mr. Seibers filed a reorganization plan containing agreements to pay his creditors in full or in part. 11 U.S.C.A. §§ 1321, 1322 (West 1993 & Supp. 2000). Based on his testimony that "I wanted to pay back the Chapter 13 and my creditors in full through the payment plan as it was," we also presume that Mr. Seibers had agreed in his Chapter 13 plan to repay all his creditors in full, including Mr. Manning. Absent an agreement of this nature, we perceive no legal basis for imposing on Mr. Seibers a legal obligation to pay anything to Mr. Manning because Mr. Manning permitted the statute of limitations to run without filing suit against Mr. Seibers. Mr. Seibers' agreement to repay Mr. Manning would not have been affected Mr. Manning's eventual decision not to sue Mr. Seibers.

While the record is clear that Mr. Seibers was fully aware, by no later than April 1997, of the role that Mr. Jared had played with regard to Mr. Manning's bankruptcy claim, the record is less clear about what Mr. Seibers knew in April 1995. Mr. Seibers may very well have been aware of Mr. Manning's bankruptcy claim in April 1995, but it is unclear whether he knew that the claim had been prepared and filed by Mr. Jared. Even if we presume that Mr. Seibers was fully aware in April 1995 that Mr. Jared had prepared and filed Mr. Manning's claim, there is no evidence that Mr. Jared complied with the requirements of Tenn. S. Ct. R. 8, DR 5-105(C) as far as either Messrs. Seibers or Manning were concerned. As a result of this oversight, Mr. Jared was in violation of Tenn. S. Ct. R. 8, DR 5-105(A) & (B) from April 1995 through April 1997. This violation was effectively cured in April 1997 when Mr. Jared formally withdrew from representing Mr. Manning in the bankruptcy proceeding, obtained Mr. Manning's release and consent for him to represent Mr. Seibers, and fully informed Mr. Seibers of the role he had played in preparing and filing Mr. Manning's bankruptcy claim.

**B.**

The question that remains to be decided is whether Mr. Jared should forfeit all or any part of his fee because of the conflict of interest that existed from April 1995 through April 1997. Like the trial court, we answer this question in the negative for two reasons. First, Mr. Seibers waived his opportunity to rely on this conflict of interest claim to avoid paying Mr. Jared's fee because he failed to assert the claim in April 1997 when it was fully disclosed to him and again on October 23, 1997, when he and Mr. Jared negotiated the new fee agreement. Second, Mr. Seibers has introduced no evidence that the conflict of interest impaired the value of Mr. Jared's work or that it threatened or harmed any of Mr. Seibers' interests.

Parties seeking to take advantage of conflict of interest claims must assert these claims in a timely manner. *Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d at 410 (disqualification of a lawyer); *Davis v. Tennessee Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999) (disqualification of a judge); *Kinnard v. Kinnard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (disqualification of a judge). Mr. Seibers did not assert that Mr. Jared should forfeit his fee because of his conflict of interest until sometime after January 1998, even though Mr. Seibers had been aware of the matter in April 1997 at the latest and possibly as early as April 1995. Mr. Seibers' delay in complaining about Mr. Jared's conflict reflects a tactical mind set and improper motives. Rather than discharging Mr. Jared because of a conflict of interest, Mr. Seibers consciously chose to accept the benefit of Mr. Jared's continuing efforts through October 1997. This delay provides one of two independent grounds for declining to require Mr. Jared to forfeit all or any portion of his fee.

Aside from his delay in complaining about Mr. Jared's conflict of interest, Mr. Seibers' forfeiture claim is undermined by his inability to come forward with any colorable evidence that Mr. Jared's relationship with Mr. Manning adversely affected the prosecution of Mr. Seibers' claim against Pepsi-Cola and the other defendants. Mr. Lowery, the lawyer who replaced Mr. Jared, stated in his deposition that Mr. Jared had "stayed on top" of the case and that there was no evidence that

Mr. Seibers "lost a dime" because of any actual or perceived conflict of interest. Even the lawyer who had represented Pepsi-Cola stated that, based on Mr. Jared's efforts, it was likely that continued negotiations would have resulted in greater settlement authority from his client than he had when Mr. Seibers discharged Mr. Jared. The testimony of these two lawyers provides ample evidentiary support for the trial court's conclusion that Mr. Seibers had not been prejudiced by the fact that Mr. Jared remained Mr. Manning's attorney of record from April 1995 through April 1997.

## III.

We affirm the judgment awarding Mr. Jared $69,525.83 in fees and expenses and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Hiram Seibers, Jr., and his surety for which execution may issue, if necessary.

_____
WILLIAM C. KOCH, JR., JUDGE