IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 6, 2000 Session

## GEORGE DAVID SCOTT v. LINDA TRIBBLE SCOTT

**Appeal from the Circuit Court for Davidson County**
**No. 95D-824     Muriel Robinson, Judge**

_____

**No. M1999-00322-COA-R3-CV - Filed March 20, 2001**

_____

This appeal involves a post-divorce dispute over child support.  Fifteen months after the parties were divorced in the Circuit Court for Davidson County, the custodial spouse petitioned the trial court to increase the noncustodial spouse's child support obligation because he was voluntarily underemployed and to hold the noncustodial spouse in criminal contempt.  After being threatened with Tenn. R. Civ. P. 11 sanctions, the custodial spouse abandoned her criminal contempt allegations.  Following a hearing, the trial court found that the noncustodial spouse was not voluntarily underemployed but increased his child support prospectively because of an anticipated increase in his income.  On this appeal, the custodial parent takes issue with the trial court's refusal to find that the noncustodial parent was voluntarily underemployed, to make the increased child support retroactive to the date of her petition, and to award her only a portion of her legal expenses.  We affirm the trial court and further find that the custodial spouse is not entitled to an additional award for the legal expenses she has incurred on this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Robert Todd Jackson, Nashville, Tennessee, for the appellant, Linda Tribble Scott.

Jack Norman, Jr., Nashville, Tennessee, for the appellee, George David Scott.

**OPINION**

George David Scott is in the home repair business and is a qualified flight instructor.  Linda Tribble Scott is a school teacher.  The Scotts' marriage of over twenty years ended on December 13, 1995, when they were divorced in the Circuit Court for Davidson County.  The divorce decree incorporated their marital dissolution agreement in which the parties agreed that Ms. Scott would receive custody of their two children and that Mr. Scott would pay Ms. Scott $310 per month in child support.  The agreement recites that this level of child support was consistent with the child support

guidelines. The agreement also requires Mr. Scott to inform Ms. Scott of his income by February of each year.

Despite their apparently amicable divorce, the parties' relationship rapidly deteriorated after Mr. Scott married again in March 1997. On month later, on April 9, 1997, Ms. Scott petitioned the trial court to increase Mr. Scott's child support, alleging that he was receiving income from "his parents, his new wife, or possibly a trust fund," and that he was willfully and voluntarily underemployed. She also petitioned the trial court to cite Mr. Scott with six counts of criminal contempt.[1] Mr. Scott filed an answer and counter-petition denying that he was voluntarily underemployed or that he was receiving additional income from other sources. He vehemently denied the allegations in Ms. Scott's contempt petition.[2] He also requested Tenn. R. Civ. P. 11 sanctions against Ms. Scott and asserted that she had filed the contempt petition solely to harass him and to cause him to incur unnecessary legal expenses.

In February 1998, Mr. Scott voluntarily increased his child support payments from $310 to $410 per month. The hearing on the pending petitions, originally scheduled for February 2, 1998, was continued because of a discovery dispute over late-filed exhibits to Mr. Scott's deposition. When the hearing began on February 25, 1999, the parties announced that Ms. Scott was abandoning her criminal contempt allegations in return for Mr. Scott's agreement not to pursue Tenn. R. Civ. P. 11 sanctions. During the hearing, both parties presented evidence regarding Mr. Scott's employment and salary, and Ms. Scott presented her lawyer's affidavit that she had incurred $7,701.25 in legal expenses in pursuing this litigation.

On March 15, 1999, the trial court filed an order increasing Mr. Scott's child support obligation from $410 to $435 per month beginning March 1, 1999, based on the anticipated increase in Mr. Scott's 1999 income from $18,920 in 1998 to $20,000. The order also provided that Mr. Scott's child support would be decreased to $282 per month on June 1, 1999, when their older child anticipated graduating from high school or on the child's eighteenth birthday in August 1999, whichever occurred later. The trial court also found that Mr. Scott was not voluntarily underemployed and awarded Ms. Scott $250 of her claimed legal expenses. Ms. Scott has appealed.

---

[1] Ms. Scott's petition alleged (1) that Mr. Scott had violated the marital dissolution agreement on three occasions by speaking directly with the children regarding visitation arrangements, (2) that Mr. Scott had willfully failed to pay his share of $459.32 in medical expenses not covered by insurance, (3) that Mr. Scott had attempted to charge one of his medical bills to Ms. Scott's insurance policy after the parties were divorced, and (4) that Mr. Scott was in arrears in his alimony and child support for the month of March 1997. Ms. Scott demanded that Mr. Scott be fined and incarcerated for a total of sixty days.

[2] Mr. Scott's response to Ms. Scott's contempt petition suggests how insubstantial Ms. Scott's allegations may have been. He pointed out that he discussed visitation arrangements with the children only when they broached the subject and that he made clear that all arrangements were subject to Ms. Scott's approval. He also pointed out that he had received word of the $459.32 medical bill only two weeks before Ms. Scott filed her contempt petition. He also provided a letter from his healthcare provider that the $46 charge to his wife's insurance was the provider's mistake and that it had been corrected. Finally, he pointed out that Ms. Scott had not notified him that his check for the March 1997 support payments had not cleared.

# I.
## MR. SCOTT'S ALLEGED VOLUNTARY UNDEREMPLOYMENT

Ms. Scott asserts that the evidence preponderates against the trial court's conclusion that Mr. Scott was not willfully and voluntarily underemployed. She argues that the record contains no credible evidence that Mr. Scott is physically unable to engage in his contracting business full-time or that he has been unable to work full-time as a flight instructor. We have determined that the trial court's conclusion that Mr. Scott is not willfully and voluntarily underemployed has adequate evidentiary support.

## A.

Mr. Scott is in the home repair business and is also a certified flight instructor. His hourly earnings vary between $16 and $20 per hour. Mr. Scott is unable to pursue his home repair business full time because of a degenerative condition in a disk in his back – a condition known to Ms. Scott at the time of the divorce. He has also had some difficulty finding steady work as a flight instructor. At the time of the hearing, Mr. Scott was pursuing possible employment as a pilot with the Tennessee Department of Transportation.

Mr. Scott earned only $18,920.99 in 1998.[3] In February 1998, he voluntarily increased his child support payments from $310 to $410 per month because his 1997 income exceeded the income he earned in 1996. During the February 1999 hearing, Mr. Scott testified that he expected to earn approximately $20,000 in 1999. During this same time, Ms. Scott's income was approximately $38,000.

## B.

Child support matters are largely governed by the child support guidelines first promulgated in 1988 by the Tennessee Department of Human Services under the authority of Tenn. Code Ann. § 36-5-101(e)(2) (Supp. 2000). The purpose of these guidelines is to assure that children receive support reasonably consistent with their parents' financial resources. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248-49 (Tenn. Ct. App. 2000). The guidelines accomplish this purpose by establishing a straightforward formula for determining child support and by providing that the amount of child support calculated with this formula is presumptively correct. Tenn. Comp. R. & Regs. r. 1240-2-4-.02(7) (1994). The two significant variables in the formula are the number of minor children requiring support and the net income of the parent who will be required to pay this support. *Anderton v. Anderton*, 988 S.W.2d 675, 680 (Tenn. Ct. App. 1998).

The obligor parent's income is the most important variable in proceedings to set or to modify child support. *Turner v. Turner*, 919 S.W.2d 340, 344 (Tenn. Ct. App. 1995). Once the obligor parent's income has been determined, the guidelines require the courts to calculate the parent's child support obligation using percentages based on the number of children needing support. Tenn. Comp.

---

[3]In 1998, Mr. Scott earned $16,258.50 from his home repair business and $2,662.49 from giving flying lessons.

R. & Regs. r. 1240-2-4-.03(5) (1994). In most circumstances, the result of this calculation becomes the parent's child support obligation. However the courts may deviate these guidelines by making detailed written findings explaining why the strict application of the guidelines would be inappropriate and why deviating from the guidelines would be in the child's best interests. Tenn. Comp. R. & Regs. r. 1240-2-4-.02(7), -.04(2) (1994).

A parent's income is generally established using pay stubs, personal tax returns, or other documents subject to easy discovery. Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(e); *Kirchner v. Pritchett*, No. 01A01-9503-JV-00092, 1995 WL 714279, at *2 (Tenn. Ct. App. Dec. 6, 1995) (No Tenn. R. App. P. 11 application filed). However, the guidelines anticipate that circumstances might arise when this information is not available. In the absence of other reliable information regarding a parent's income, the guidelines require the courts to impute a $25,761 annual income to the obligor parent. Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(e). If the obligor parent fails to produce evidence of income in a proceeding to modify child support, then the guidelines require the courts to calculate the child support by increasing the current child support by not more than ten percent per year for each year since the child support was ordered or last modified. Tenn. Comp. R. & Regs. r. 1240-2-4-.03(f).

The guidelines also anticipate circumstances in which the parent will be able to provide evidence of his or her current income but that income is far below the income that the parent is capable of earning. In circumstances where a parent is "willfully and voluntarily underemployed or unemployed," the guidelines permit the court to calculate the parent's child support obligation "based on a determination of potential income, as evidenced by educational level and/or previous work experience." Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(d). Determining whether a person is willfully and voluntarily underemployed is a fact-driven inquiry requiring careful consideration of all the attendant circumstances. *Ralston v. Ralston*, No. 01A01-9804-CV-00222, 1999 WL 562719, * 3 (Tenn. Ct. App. Aug. 3, 1999) (No Tenn. R. App. P. 11 application filed).

Obligor parents should not be permitted to avoid their child support obligations by liquidating their businesses, by quitting work, or by taking lower paying jobs. *Brooks v. Brooks*, 992 S.W.2d 403, 406-07 (Tenn. 1999); *Garfinkle v. Garfinkle*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Accordingly, the courts must scrutinize the reasons for the obligor parent's career decision, *McGaffic v. McGaffic*, No. 03A01-9707-CV-00286, 1997 WL 772899, *4-5 (Tenn. Ct. App. Dec. 9, 1997) (No Tenn. R. App. P. 11 application filed); *Ford v. Ford*, No. 02A01-9507-CH-00153, 1996 WL 560258, *3-4 (Tenn. Ct. App. Oct. 3, 1996) (No Tenn. R. App. 11 application filed), and the reasonableness of his or her ultimate career choice. *Narus v. Narus*, No. 03A01-9804-CV-00126, 1998 WL 959839, * 2 (Tenn. Ct. App. Dec. 31, 1998) (No Tenn. R. App. P. 11 application filed).[4]

---

[4]The reasons for an obligor parent's career choices must figure prominently in any willful and voluntary underemployment analysis. An obligor spouse must be able to satisfy the court that his or her career choices have been made in good faith and not for the purpose of evading or frustrating a child support obligation. 2 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 18.1, at 361-62 (2d ed. 1987). In these cases, the courts should examine the reasonableness of the obligor parent's actions and decisions in light of all the relevant circumstances, including the career choice's potential impact on the children.

(continued...)

Trial courts generally address willful and voluntary underemployment issues in non-jury proceedings. Accordingly, our review of their findings of fact is governed by Tenn. R. App. P. 13(d). *Brooks v. Brooks*, 992 S.W.2d at 404. Trial courts have the opportunity to hear and see the witnesses testify and, therefore, are normally in the best position to judge their credibility. *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998); *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995). Consequently, this court accords great weight to the trial court's determination of credibility, *Gaskill v. Gaskill*, 936 S.W.2d 626, 633 (Tenn. Ct. App. 1996), and we routinely decline to second-guess a trial court's credibility determinations unless there is concrete, clear, and convincing evidence to the contrary. *Bingham v. Dyersburg Fabrics Co.*, 567 S.W.2d 169, 170 (Tenn. 1978); *Thompson v. Creswell Indus. Supply, Inc.*, 936 S.W.2d 955, 957 (Tenn. Ct. App. 1996).

## C.

The evidence in the record before us does not preponderate against the trial court's conclusion that Mr. Scott was not willfully and voluntarily underemployed. Mr. Scott testified that his degenerative disk condition prevents him from performing construction work on a full-time basis and that he has had difficulty finding pupils desiring flight instruction. Mr. Scott demonstrated good faith by voluntarily increasing his child support payments in 1998 and by applying for a position as a pilot with the Tennessee Department of Transportation. In addition, his unrefuted testimony was that Ms. Scott was aware of his disability when she entered into the marital dissolution agreement in 1995.

The only evidence contradicting Mr. Scott's testimony regarding his physical condition is an application for life insurance Mr. Scott completed in 1996 in which Mr. Scott stated that he was not currently disabled due to accident or illness and that he was not unable to perform the duties of his occupation due to accident or illness. When confronted with this application at trial, Mr. Scott stated that answering that question in the negative was the only way he could obtain the life insurance policy required by the marital dissolution agreement.[5] The trial court apparently believed Mr. Scott's

---

[4](...continued)

This court has, on occasion, stated that an obligor spouse could be found to be willfully and voluntarily underemployed even if his or her career choice was not motivated by a desire to lessen or evade his or her child support obligation. *State ex rel. Ledbetter v. Godsey*, No. M1998-00958-COA-R3-CV, 2000 WL 798641, at *4 n.9 (Tenn. Ct. App. June 22, 2000) (No Tenn. R. App. P. 11 application filed); *Ralston v. Ralston*, 1999 WL 562719, at *2 n.1; *Anderson v. Anderson*, No. 01A01-9704-CH-00186, 1998 WL 44947, at *4 (Tenn. Ct. App. Feb. 6, 1998) (No Tenn. R. App. P. 11 application filed); *Ford v. Ford*, 1996 WL 560258, at *3. This conclusion may be open to re-examination in light of *Brooks v. Brooks* in which the court drew a correlation between willful and voluntary underemployment and a parent's intent "to decrease both his income and his child support obligation." *Brooks v. Brooks*, 992 S.W.2d at 406. Noting that parents have a right "to make reasonable employment decisions," Justice Birch noted that courts should consider "whether the underemployment represents a bona fide career change that outweighs the adverse effect of the diminished income." *Brooks v. Brooks*, 992 S.W.2d at 408-09 (Birch, J., dissenting). We need not address this issue here because there is no evidence that Mr. Scott changed his employment activities contemporaneously with the divorce.

[5]The marital dissolution agreement required both parties to obtain a $25,000 life insurance policy naming the opposite party as a beneficiary and to maintain these policies as long as one of the parties had a child support obligation.

explanation.[6] We see no reason to second-guess the trial court's determination of Mr. Scott's credibility on this issue. Accordingly, we affirm the trial court's finding that Mr. Scott was not willfully and voluntarily underemployed because there is no evidence that he has reduced his income simply to evade this obligation to support his children.

## II.
### RETROACTIVITY OF THE CHILD SUPPORT INCREASE

Ms. Scott also asserts that the trial court erred by refusing to make the increase in child support from $410 to $435 per month retroactive to the filing of her petition in April 1997. She argues that Tenn. Code Ann. § 36-5-101(a)(5) requires that modifications in child support must become effective on the date that an application for modification of child support is filed. We agree with the trial court's apparent conclusion that Ms. Scott failed to prove that she was entitled to more child support than she actually received during 1997 and 1998.

Child support modifications are appropriate upon the application of either party only if a "significant variance" arises between the amount of support payable under the original order and the amount payable under the current child support guidelines. Tenn. Code Ann. § 36-5-101(a)(1). A "significant variance" is "at least 15% if the current support is one hundred dollars ($100.00) or greater per month and shall be at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R. & Regs. r. 1240-2-4-.02(3); *Dwight v. Dwight*, 936 S.W.2d 945, 948 (Tenn. Ct. App. 1996); *State ex rel. Smith v. Early*, 934 S.W.2d 655, 658 (Tenn. Ct. App. 1996); *Turner v. Turner*, 919 S.W.2d at 343.

Ms. Scott never proved, and the trial court never found, that there was a material variance between the child support payments Mr. Scott actually made in 1997 and 1998 and the child support payments he should have been paying based on his salary at the time. Now that we have determined that Mr. Scott was not willfully or voluntarily underemployed, there is no evidence in the record showing that the $310 per month payments Mr. Scott made up to February 1998 or the $410 per month payments he made after February 1998 were inconsistent with the guidelines.

By the time the trial court heard this matter, there was a significant variance between the $310 per month child support payments Mr. Scott had paid pursuant to the original December 1995 divorce decree and the amount of support he would be required to pay based on his 1999 projected annual income of $20,000. However, in the absence of any proof of discrepancies in the child support payments made prior to February 1999, the trial court properly wielded its authority under Tenn. Comp. R. & Regs. r. 1240-2-4-.02(3) to increase Mr. Scott's child support obligation prospectively. As far as we can determine, applying the trial court's decision to increase Mr. Scott's child support obligation to $435 per month retroactively to April 1997 would result in Ms. Scott receiving more child support that the guidelines would have required at the time. Ms. Scott has not

---

[6]Eventually, the trial court suggested that Ms. Scott's lawyer refrain from constantly revisiting the question of Mr. Scott's answer on the insurance application because "if something happens to [Mr. Scott], then this insurance company based on this transcript won't have to pay."

demonstrated that she would have been entitled to an upward deviation from the guidelines in 1997 and 1998.

## III.
### MS. SCOTT'S LEGAL EXPENSES

Ms. Scott also asserts that the trial court erred by awarding her only $250 of her claimed $7,701.25 in attorney's fees and costs.[7] She asserts that she is entitled to these expenses under Tenn. Code Ann. § 36-5-103(c) (Supp. 2000) because she incurred them as part of her efforts to enforce the child support provisions in the parties' marital dissolution agreement. We have determined that the trial court's award for legal expenses was, if anything, generous.

The reasonableness of requested attorney's fees depends on the facts of each case, *Hail v. Nashville Trust Co.*, 31 Tenn. App. 39, 51, 212 S.W.2d 51, 56 (1948), not on the prevailing customs in the area. *Adams v. Mellen*, 618 S.W.2d 485, 489 (Tenn. Ct. App. 1981). Accordingly, persons seeking an award for legal expenses must demonstrate not only that the services for which the expenses were incurred are the types of services covered by Tenn. Code Ann. § 36-5-103(c) but also that the expenses incurred were reasonable. The courts use the factors in Tenn. S. Ct. R. 8, DR 2-106 for guidance in determining the reasonableness of requested attorney's fees. *Connors v. Connors*, 594 S.W.2d 672, 676-77 (Tenn. 1980); *Albright v. Mercer*, 945 S.W.2d 749, 750-51 (Tenn. Ct. App. 1996); *Alexander v. Inman*, 903 S.W.2d 686, 695 (Tenn. Ct. App. 1995).

The awards for legal expenses authorized by Tenn. Code Ann. § 36-5-103(c) are discretionary. *Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997). Accordingly, we will decline to interfere with a trial court's decision regarding awards for legal expenses unless the decision is not supported by the facts or is based on a misapplication of legal principles. *McCarty v. McCarty*, 863 S.W.2d 716, 722 (Tenn. Ct. App. 1992).

There are two reasons why the trial court was acting well within its discretion when it determined that Ms. Scott was entitled to recover only $250 of her legal expenses. First, Ms. Scott did not prevail on any of the claims in her original petition. Therefore, there exists no basis for concluding that she was required to institute this proceeding to protect her children's support rights. Second, part of Ms. Scott's legal expenses relate to her efforts to have Mr. Scott held in criminal contempt. She abandoned these contempt charges only after she was confronted with the possibility of Tenn. R. Civ. P. 11 sanctions. For the two years that these charges were pending, Mr. Scott, who earns just over one-half of Ms. Scott's income, was forced to incur legal expenses of his own to defend against them. Under these circumstances, Ms. Scott had no basis for seeking to recover the expenses she incurred relating to the contempt charges.

---

[7]These expenses consisted of 40.95 hours billed at $175 per hour and $535 in expenses.

After considering the evidence supporting Ms. Scott's request for attorney's fees, the trial court suggested that so much billable time should not have been spent on a case of this nature.[8] We note, in addition, that the affidavit submitted by Ms. Scott's lawyer supporting her request for legal expenses fails to distinguish between the time spent pursuing the contempt allegations and the time spent on other aspects of the case. The burden was on Ms. Scott to establish the basis for her claims for legal expenses. *Beaty v. McGraw*, 15 S.W.3d 819, 831 (Tenn. Ct. App. 1998); *In re Estate of Perlberg*, 694 S.W.2d 304, 309 (Tenn. Ct. App. 1984). Accordingly, we will let the award for legal expenses stand because Ms. Scott has not provided us with any factual or legal basis to second-guess the trial court's decision.

## IV.
### MS. SCOTT'S LEGAL EXPENSES ON APPEAL

Ms. Scott also asks this court to award her the costs and expenses of pursuing this appeal. Because custodial parents incur legal expenses on behalf of their children when pursuing appeals in child support enforcement proceedings, this court may, in its discretion, award those expenses to custodial parents without regard to their ability to pay. Tenn. Code Ann. § 36-5-103(c); *Ragan v. Ragan*, 858 S.W.2d 332, 334 (Tenn. Ct. App. 1993); *Gaddy v. Gaddy*, 861 S.W.2d 236, 240-41 (Tenn. Ct. App. 1992); *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

Ms. Scott asserts that she pursued this appeal on behalf of the parties' children. While it is true that the issues raised in her appeal concern child support, we are not convinced that these proceedings were not initiated for reasons other than the children's welfare. In addition, we generally do not award legal expenses associated with an appeal when the party seeking them does not prevail. *Hunt v. Hunt*, No. M1997-00221-COA-R3-CV, 2000 WL 1030622, at *5 (Tenn. Ct. App. July 27, 2000) (No Tenn. R. App. P. 11 application filed). Therefore, we exercise our discretion to deny Ms. Scott her legal expenses on appeal.

## V.

We affirm the March 15, 1999 judgment prospectively awarding Ms. Scott increased child support in the amount of $435 per month. We also remand the case to the trial court for whatever further proceedings may be required consistent with this opinion. We tax the costs of this appeal to Linda Tribble Scott and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[8]The court commented that it could not "imagine $7,000 in a case like this. At some point you've got to know that the well is dry."